THE MICHIGAN PIPE COMPANY v. THE NORTH BRITISH
& MERCANTILE INSURANCE COMPANY.

*Fire insurance—Terms of contract—Witness—Impeachment—*
*Charge to jury.*

1. The opinions in *Michigan Pipe Co. v. Insurance Co.*, 92 Mich.
   482, dispose of several of the questions raised in this case.

2. The contention of the defendant that there is no evidence to
   support a contract of insurance to begin at a future date is
   without force, the testimony tending to show that plaintiff's
   agent ordered the agent who wrote the policy sued upon to
   write up an aggregate amount of insurance, no particular
   companies being mentioned, and was informed by the agent
   that he desired to place the insurance in companies which he
   represented; that some of his lines were full, but that some of
   the existing policies would expire at a given date, and that he
   expected to secure the agency for other companies, and to
   place a portion of the insurance in said companies; and that,
   on account of its being so near the end of the month (two
   days), he wished to get the insurance into his next month's
   reports, and would not write any until the first of the month;
   which insurance was written on the 2d, 3d, and 5th of said
   month.

3. Neither is the contention tenable that the rate of premium and
   the term of the policy were not fixed, it appearing that the
   rate was a fixed annual rate for that class of property, the
   location and description of which was given, and that plaint-
   iff's agent knew the rate of premium, and that the usual term
   was one year, and that he had for five years prior to that
   time dealt with the insurance agent for the parties interested
   in the plaintiff company, and had insured with him for them
   to the extent of from $50,000 to $100,000 annually.

4. The credit of a witness may be impeached by exhibiting the
   improbabilities of his story on cross-examination, or by show-
   ing conduct inconsistent therewith, or by showing statements
   made by the witness inconsistent with his testimony, or by
   direct testimony affecting his reputation for veracity.

5. Where a party avails himself of all of these modes of impeach-
   ment, the credit to be given to the witness depends upon a
   consideration of the entire testimony on that subject; and it is

error to instruct the jury that if, after considering the testimony of the impeaching witnesses, and of those who have been brought to contradict them, they do not believe that the general reputation of the witness in the community is that of an untruthful man, they should dismiss the whole attempted impeachment from their minds.

Error to Bay. (Cobb, J.)    Argued October 12, 1893. Decided November 10, 1893.

*Assumpsit.* Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Hanchett, Stark & Hanchett* (*Thomas Bates,* of counsel), for appellant, contended:

1. The duration or term of the risk—that is, the date when it begins and the date when it ends—is an essential part of the contract of insurance, so that, unless the parties have agreed upon that subject, there is no insurance; citing *Michigan Pipe Co. v. Insurance Co.,* 92 Mich. 482, 490; *Kimball v. Insurance Co.,* 17 Fed. Rep. 625; *Insurance Co. v. Young,* 5 Ins. Law J. 17; *Insurance Co. v. Jenkins,* Id. 514; *Tyler v. Insurance Co.,* 4 Rob. (N. Y.) 151; *Strohn v. Insurance Co.,* 37 Wis. 625; *Manufacturing Co. v. Insurance Co.,* 69 Id. 573; 1 Wood, Ins. §§ 5, 6.

2. As the terms of the insurance contained in the policy had not been agreed upon before the loss, the policy could not be binding upon the defendant. Its acceptance by the plaintiff was necessary to make it a valid contract; citing *Michigan Pipe Co. v. Insurance Co.,* 92 Mich. 482, 491; *Faughner v. Insurance Co.,* 86 Id. 536; *Hartshorn v. Insurance Co.,* 15 Gray, 240, 244.

*Hatch & Cooley,* for plaintiff.

McGRATH, J. This is an action upon a policy of insurance. The policy was one of a number ordered at the same time, a suit upon one of which was before us in *Michigan Pipe Co. v. Insurance Co.,* 92 Mich. 482. The opinions in that case dispose of several of the questions raised here, and it is unnecessary again to discuss them.

The insurance was ordered June 28, and the policy was not written until July 3, and it is insisted that there was no evidence to support a contract of insurance to begin

at a future day. There is no force in this contention. The testimony clearly tended to show that Moulthrop, plaintiff's agent, on June 28, ordered Schmeck, the insurance agent, to write up insurance for plaintiff aggregating $45,000; that no companies were mentioned; that Schmeck informed Moulthrop that he desired to place the insurance in companies which he (Schmeck) represented; that some of his lines were full, but that some of the existing policies would expire July 1; that he expected to get the agency for other companies, and expected to place some of the insurance in these new companies; that, on account of its being so near the end of the month, he wished to get the insurance into his next month's reports, and that he would not write up any until the first of the month. The insurance was distributed between a number of different companies. Schmeck testifies that he made *memoranda* selecting the companies, but that he afterwards made a new apportionment, and finally changed this apportionment after July 1 had passed. The policies were written, five on July 2, ten July 3, and one July 5. It was not expected that the risk should be taken by any one company. It appears that insurance companies place a limit upon the amount of risk taken upon given property. It was held in the case above referred to that, as between plaintiff and any one of the companies, no contract liability existed until the distribution had taken place, and that, for the purpose of such distribution, Schmeck was the agent of the plaintiff. It cannot be contended that, in view of this situation and these negotiations, the fact that the policies had not been written up until the 3d of July would have been conclusive as a defense in an action for the premium. The testimony of Moulthrop is clearly susceptible of the conclusion that no definite time was fixed; that the time was dependent, somewhat, upon a change of conditions then existing. The nature of the contract in

this respect is to be gathered from what was said, and not from what Moulthrop "thought" or "supposed," or what his "expectation" or "intention" was, so long as neither was expressed.

It is next contended that the rate of premium was not fixed, nor was the time which the insurance was to run determined. It appeared that the rate of premium was a fixed rate for that class of insurance, the location and description of which was given; that the usual term was one year; that Moulthrop had for five years prior to that time dealt with Schmeck for the parties interested in the plaintiff company, and had insured with Schmeck, for said parties, to the extent of from $50,000 to $100,000 annually. Moulthrop knew the rate of premium, and that one year was the usual term. The rate of premium was an annual rate. In parol contracts for the exchange of commodities, incidents frequently enter which rest alone in custom and usage known to the parties, which go without saying. Moulthrop's knowledge in this respect was that of his principal.

Several extracts from the charge of the court to the jury are assigned as erroneous, but, as a whole, we think the charge correctly states the law, except in one particular, which will be noticed hereafter. The plaintiff made no claim that it had received the policy before the fire occurred. It insisted that the policy had been written up on July 3, and that Schmeck had retained it in accordance with the usual practice. The court instructed the jury that, if the policy was not made out until after the fire, plaintiff could not recover. Schmeck was the only witness who testified as to the date upon which the policy was made out. His testimony was commented upon by Mr. Justice GRANT in *Michigan Pipe Co. v. Insurance Co., supra*, and it is not necessary here to recapitulate. The court instructed the jury as follows:

"In the case of the witness Schmeck, the defendant asks you to believe that he is not a truthful man; that he is so untruthful that you cannot depend upon what he has testified to as being true; and, for the purpose of proving that to you, they have brought forward a number of persons who have lived in the same community with him, and who say that they know his reputation for truthfulness there among the people who know him, and that that reputation of his is so bad that they would not believe him under oath. Of course, when I mention that, I do not wish to call your attention to that side of it particularly. I wish you, of course, to keep your minds upon the testimony that has been given upon both sides of that. question, as well as of every other question. If the general reputation of a man— the reputation that he has among his neighbors and acquaintances—is such that they consider him untruthful, if that man is offered as a witness in court, the opposite party has always a right to show that reputation to the jury in this way, and the jury may and should take it into account, in making up their minds whether to believe his testimony or not. But to disprove that showing which the defendant has made, or attempted to make, the plaintiff has undertaken to show that Mr. Schmeck's reputation for truthfulness was not such as the defendant claims it to be; that he never was considered untruthful before this banking firm, of which he was a member, failed; and that whatever has since been said against his truthfulness up there was merely the result of disappointment, vexation, and anger of those who lost money by the failure, and did not by any means represent the deliberate opinion of the community generally on the question of his truthfulness; so that, notwithstanding he had failed in business, the people of the community still considered him to be a truthful man. The question whether he was generally looked upon as an untruthful man by his neighbors and acquaintances is a question which you must decide. If you find that that is the case, it is an important fact for you to keep in mind when you come to consider whether or not the testimony that he has given you in this case is true. That is merely the expression of the familiar fact that an untruthful man is sometimes, and generally, not so readily believed as a man who is known to be truthful.

"But if, after having carefully considered the testimony of the impeaching witnesses, and of those witnesses who have

been brought here to contradict them, you do not believe that his general reputation in the community is that of an untruthful man, then you will dismiss this whole attempted impeachment from your minds, and treat his testimony just as you would treat the testimony of any other witness; that is, examine it, look it over, consider how it compares with the testimony of other witnesses, and with facts that are admitted or proved, and consider whether you think he has any interest, or feels such an interest, in the result, as would naturally lead him to color his testimony one way or the other; consider whether his memory is probably accurate, and, from all that you can see or find out about him here in court, conclude whether you will believe him or not. That is just what you do with all witnesses, and that is just the way you should treat him."

Exception is taken, and we think well taken, to the last paragraph of this instruction, commencing with the words, "But if, after having carefully considered," etc.     It is erroneous in that it segregated that portion of the testimony bearing upon the witness' character for veracity from other testimony calculated to affect the credibility of the witness, and instructed the jury to consider separately the testimony *pro* and *con* as to the character of the witness for truthfulness, and, if they did not believe that his general reputation was that of an untruthful man, to dismiss the whole attempted impeachment from their minds. The credit of a witness may be impeached in various modes: By exhibiting the improbabilities of his story on cross-examination, or showing conduct inconsistent therewith; by showing statements made by the witness inconsistent with his testimony; and by testimony affecting his character for veracity.     The defense had not confined themselves to any one of these modes, but had availed themselves of all of them.     The credit to be given to the witness depended upon a consideration of all the testimony bearing upon that question, and it was error to direct the attention of the jury to any particular portion, and instruct

them, upon their view of that portion, to dismiss the whole subject of impeachment from their minds. .

For this error the judgment must be reversed, and a new trial ordered.

The other Justices concurred.