## S. A. FLENNER ET AL. v. A. S. WALKER, JR.
### No. 394.

1. **Volunteer from Foreign Country.** — See facts held insufficient to prove that a deceased soldier was a volunteer in the Texas Army from a foreign country, as intended by the Act of January 14, 1841, touching estates of such deceased volunteers.

2. **Presumption of Facts Conferring Jurisdiction.**—When a court deals with a subject that falls within its general jurisdiction, and makes orders and decrees that are apparently valid, it is presumed that every fact necessary in order to confer jurisdiction was established to the satisfaction of the court. So held, where jurisdiction was attacked on grounds that the deceased was a volunteer soldier from a foreign country. The facts were held insufficient to rebut the presumption.

3. **Cases Adhered to — Valid Administration.**—Lyne v. Sanford, 82 Texas, 61; and Saul v. Frame, 3 Texas Civil Appeals, 596, adhered to, touching irregularities not affecting proceedings had in a valid administration.

4. **Findings of Fact by Trial Court.** — Where a fact is found by the trial court, and not excepted to, and the statement of facts does not conflict with such finding, it may be presumed that there was evidence supporting the fact. See example.

5. **Description.**—Orders for sale, and confirmation of sale, described the certificate sold as the *Flenner headright*. The defendant claimed under such sale. As there could be but one *Flenner headright* issued to the Flenner whose collateral heirs were the plaintiffs, *held*, that the description sufficiently identifies the land located by the certificate so purchased as the headright of the plaintiff's intestate.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

*Mathews & Wood*, for appellants.—1. Samuel Flenner having been a volunteer in the Texas Army from a foreign country, and having fallen in one of the battles of the Republic, and the administrator not having shown himself entitled to the estate, or to administration thereon, and not having produced any authority from the heirs or next of kin of said Flenner authorizing him to administer on said estate, the letters of administration were granted contrary to law and conferred no right upon the administrator, and the court erred in not so holding. Pasch. Dig., arts. 1398, 1400, 1401, 4150; Cattle Co. v. Boon, 73 Texas, 548; Templeton v. Cattle Co., 77 Texas, 55; Duncan v. Veal, 49 Texas, 603; Chinn v. Taylor, 64 Texas, 386; The State v. Casinova, 1 Texas, 404.

2. The petition for letters of administration does not show that Flenner either resided or died in Harris County, where administration proceedings were begun on June 30, 1851, that any of his property was there, or that he had no kindred in the State of Texas; and it being proved that Flenner's last place of residence was in Travis County, that he was killed on the Santa Fe Expedition, on July 20, 1841, and that no inventory of any property subject to the administration was ever filed, the proceedings

were nullities.   Harwood v. Wylie, 70 Texas, 541; Templeton v. Cattle Co., 77 Texas, 55; Cattle Co. v. Boon, 73 Texas, 553; Hearn v. Camp, 18 Texas, 546; Brockenborough v. Melton, 55 Texas, 503; Duncan v. Veal, 49 Texas, 610; Eastland v. Lester, 15 Texas, 100; Todd v. Masterson, 61 Texas, 624; Pasch. Dig., art. 1260; George v. Watson, 19 Texas, 360.

3. It does not appear that the certificate described in the administrator's application for an order to sell, the order, report, or confirmation of sale, is the same by virtue of which the land in controversy was located and patented.

*W. B. Abney, Walter Acker,* and *Terrell & Walker,* for appellee.—The record shows that Flenner was a citizen of Harris County and had a residence there.   He is shown to have died in 1842, leaving debts and property.   Administration began June 4, 1851, and at that time there was no limitation as to the time within which administration should be had.   The administrator gave bond and qualified, returning an inventory.   He applied for sale of property on two occasions.   In each debts are shown.   The second sale was the headright certificate and duplicate which had been obtained.   The sale was regularly made, duly returned, and was confirmed by order of the Probate Court.   This was a case of actual jurisdiction of the estate by the Probate Court of Harris County.   The petition for letters of administration showed deceased to have been a citizen of Harris County, while the testimony showed that after the war he had settled in Houston and engaged in keeping a tavern.   No other residence in the State is shown.   These facts which appear show a valid sale, certainly in a collateral attack.   Pasch. Dig. art 1260, and note 462; Lyne v. Sanford, 82 Texas, 58; Weems v. Masterson, 80 Texas, 52; Williams v. Haynes, 77 Texas, 284; Martin v. Robinson, 67 Texas, 368; Louder v. Schluter, 78 Texas, 106; Mayers v. Paxton, 78 Texas, 200; Guilford v. Love, 49 Texas, 739; Withers v. Paterson, 27 Texas, 496; Alexander v. Maverick, 18 Texas, 195; Lynch v. Baxter, 4 Texas, 442; Elliott v. Pearsall, 1 Pet., 340; Thompson v. Tolmie, 2 Pet., 168.   Citizenship involves residence with right to vote and hold office at place.   Black's Law Dic., 206.

FISHER, Chief Justice.—An action of trespass to try title, by appellants against the appellee, to recover the Samuel Flenner one-third league headright survey, patented to the heirs of Samuel Flenner, deceased.

The court below rendered judgment in favor of appellee, and that the plaintiffs take nothing by their suit.

This court finds the following as the facts, as gathered from the record:

1. The land in controversy, that described in the plaintiffs' petition, was patented to the heirs of Samuel Flenner on March 7, 1854, by the State of Texas.

2.  Samuel Flenner died sometime between the years 1839 and 1842.

3.  Appellants Catherine Flenner, Margaret Morgan, Elizabeth Beaver, wife of F. O. Beaver, John Gillespie, and Anna Peightal, wife of James Peightal, were heirs of said Samuel Flenner.  It was shown that there were other heirs of said Flenner, but their names are not known.

4.  Deed executed by John H. Isbell, administrator of the estate of Samuel Flenner, to William R. Baker, dated December 15, 1852, conveying the one-third of league headright certificate issued to Samuel Flenner.

5.  This deed was executed under the following proceedings, had in the administration of the Flenner estate:

"*Estate of Samuel Flenner.*—Be it remembered, that the following proceedings were held before the honorable court held in and for the county of Harris and State of Texas, in the matter of application for administration of this estate, in words, characters, and figures as follows, to-wit:

"*Petition Isbell.    Petition J. H. Isbell, filed June 4, 1851.*—To the Honorable County Court of Harris County:  Your petitioner, John H. Isbell, respectfully represents, that Samuel Flenner, a citizen of said county, died several years since, intestate;  that he left some property which needs looking after;  that there is no kindred of said *Gates* known to your petitioner in Texas;  that debts are due by said estate, and that your petitioner is a creditor, and he believes that the property should be made available in order that said debts be paid.

" He prays, therefore, that he be appointed administrator of the said estate of Samuel Flenner, deceased, with full powers as such and according to law;  and as in duty bound he will ever pray.

" JOHN H. ISBELL.

"*Notice Given.    Notice Application.*—Notice of this application was this day given by me as the law directs.    June 19, 1851.

" W. R. BAKER, Clerk.

"*Petition Approved.*—From the minutes of June Term, 1851.    June 30.—The petition of John H. Isbell for the appointment of administrator of the estate having been considered, and it appearing to the court that legal notice of this application has been given as required by law, and no one appearing to contest the same, it is ordered, adjudged, and decreed by the court, that John H. Isbell be and he is hereby appointed administrator of the estate, with full power as such, subject to the orders of court, with authority to receive into possession all of the effects of decedent.

"*Inventory Ordered.*—It is further ordered, that he file an inventory of all the effects of said estate.    It is further ordered, that A. C. Davis, John D. Bergin, and James B. Hogan be and they are hereby appointed to appraise said estate.    It is also ordered, that he file a bond in double

the value of the inventory, with securities to be approved by the court. It is further ordered that the estate be continued.

"*Inventory.*—Inventory filed July 15, 1851.   Estate Samuel Flenner. Inventory as furnished by J. H. Isbell, administrator.   To amount of pay due him for services on Santa Fe Expedition, probable amount about $300, $120.

" We certify that the foregoing inventory is correctly appraised by us.

" ROBERT LOCKHART,

" HENRY LEVENHAGEN.

" Sworn and subscribed before me.

" W. R. BAKER, Clerk.

" I hereby certify, that the foregoing inventory contains all the property of the estate of Samuel Flenner, deceased, known to me.

" JOHN H. ISBELL.

" Sworn and subscribed.

" W. R. BAKER, Clerk.

" From the minutes of July Term, 1851.—July 28.   The adminstrator of this estate having his inventory of the property of this estate duly appraised and sworn to according to law, it is ordered that the same be approved and recorded.   Also, having filed his bond, with securities conditioned as the law requires, it is ordered that the same and it is hereby approved.   It is also ordered that said bond be entered of record. It is also ordered that the clerk issue the usual letters of administration.

"*Petition for sale, filed July 29, 1851.*—To the Honorable County Court of Harris County:   Your petitioner, J. H. Isbell, administrator of the estate of S. Flenner, deceased, respectfully represents to the court, that said estate consists of a certificate of public debt of the State of Texas for about $275, and that no other property has come to his hands.   He represents that said estate is indebted to a considerable amount, say $70, due William Isbell, which has been presented, and that he knows of no other debts.   Also, that your petitioner has expended about $10 for said estate to obtain the property, and that the cost of court, he is informed, will amount to $40, and that he has no means in his hands wherewith to pay said claims; he prays, therefore, that he be allowed to sell the aforesaid property in order that cost of court and the debts may be paid; and as in duty bound, etc.

"JOHN H. ISBELL.

" Sworn to and subscribed.

" W. R. BAKER, Clerk.

" From the minutes of the July Term, 1851.—July 28.   The administrator of this estate having filed his petition for a sale of the same, having

been considered, it is ordered, adjudged, and decreed by the court, that J. H. Isbell, administrator of this estate, sell at public auction, to the highest bidder for cash, at the court house door of Harris County, after ten days notice, the certificate of public debt due this estate, for services on the Santa Fe Expedition. It is also ordered that he report said sale to the September Term next. It is also ordered that an order of sale issue in the terms of the law. Also ordered that the estate be continued.

"*Account sales, filed September 20, 1851.*—To the Honorable County Court of Harris County: The undersigned, administrator of the estate of Samuel Flenner, deceased, begs leave to report, that in obedience to an order of the court, he sold according to law and said order, after ten days notice, the certificate of public debt granted to this decedent for services in the Santa Fe Expedition, and the same brought the sum of $35, and there being no higher bid, the same was sold for the sum.

"JOHN H. ISBELL.

" Sworn and subscribed before me, September 20, 1851.

" W. R. BAKER, Clerk.

"*Petition for sale, filed March 29, 1852.*—To the Honorable County Court of Harris County: Your petitioner, John H. Isbell, administrator of the estate of Samuel Flenner, deceased, respectfully represents, that said estate consists of a certificate for one-third of a league of land, the headright of said decedent, issued by the Board of Land Commissioners of Harrisburg County, upon which he has obtained from the Commissioner General a duplicate. He further represents, that said estate is indebted to your petitioner in the sum of $400, and that the cost of court and of administration will amount to about $45, and that he has paid out for obtaining duplicate certificate the sum of $7; and he further represents, that he has no means of said estate wherewith to pay said claims, and that a sale is necessary. The premises considered, he prays that he be permitted to sell said certificate, also the land upon which the same may be located, as well as all grants of land by virtue thereof to be made by the Government of Texas to said Samuel Flenner, or his heirs or legal representatives.

"JOHN H. ISBELL, Administrator.

" Sworn to and subscribed before me.

" W. R. BAKER, Clerk.

" From the minutes of the March Term, 1852.—March 29. The petition of the administrator of this estate for a sale having been duly considered, it is ordered, adjudged, and decreed, that the administrator of this estate sell at public auction to the highest bidder, on a credit of twelve months, at the court house door of Harris County, on the first Tuesday of May, A. D. 1852, within the hours prescribed by law, after twenty days notice by

posting, the headright third of a league of land certificate issued to this decedent by the Board of Land Commissioners of Harris County, first class, and upon which a duplicate has issued, signed by S. Crosby, Commissioner of the General Land Office; also, the land upon which the same may be located, as well as all grants of land by virtue of said headright to be granted by the Government of Texas to the said decedent, or his heirs or legal representatives; and the said administrator is ordered to report said sale to the May Term of this court.

"*Account sales, filed May 4, 1852*.—The administrator of this estate of Samuel Flenner, deceased, begs leave to report to the honorable County Court of Harris County, that in obedience to an order of said court, entered at the last March Term, 1852, he sold at public auction to the highest bidder, on a credit of twelve months, at the court house door of Harris County, within the hours of 10 a. m. and 4 p. m., on Tuesday, the 4th of May, 1852, after notice by posting at the court house door of said county and at three other public places outside the city of Houston in said county, the headright third of a league granted to Samuel Flenner by the Board of Land Commissioners of Harrisburg, first class, and the duplicate thereof issued by the Commissioner of the General Land Office, together with the land upon which the same may be located; and William R. Baker being the highest and best bidder for the same at the sum of $70, and no one bidding any more, the said certificate was sold to him.

" JOHN H. ISBELL, Administrator.

" Sworn to and subscribed before me, May 4, 1852.

" W. R. BAKER, Clerk.

" From the minutes of June Term, 1852.—June 28. The administrator of this estate having filed his report of a sale made by virtue of an order of this court, entered at the last March Term, and the same having been examined and the sale inquired into, and it appearing to the court that said sale has been conducted in all respects according to law and the order of sale, it is therefore ordered, adjudged, and decreed by the court, that said sale be and the same is hereby approved, in all things confirmed.

" It is also ordered, that John H. Isbell, administrator of the estate of Samuel Flenner, deceased, execute and deliver to William R. Baker, the purchaser at said sale, a deed and transfer of the right and title of said estate in and to a headright of a third of a league of land, granted to Samuel Flenner by the Board of Land Commissioners of Harrisburg County, first class, and the duplicate issued by the General Land Office, together with the land upon which the same may be located."

6. Deed from William R. Baker to the heirs of Mathias Wilbarger, dated April 6, 1855, conveying the land in controversy.

7. The appellee, Walker, is one of the heirs of Wilbarger, and has acquired the interest of the other Wilbarger heirs to the land in controversy.

*Opinion.*—1. The first assignment of error attacks the validity and legality of the administration sale of the certificate, for the reason that it appears that Samuel Flenner was a volunteer in the Texas Army from a foreign country, and was killed in one of the battles of the Republic. Therefore, that his estate, under the Act of January 14, 1841, was exempt from administration, as it was not shown that the person administering was entitled to the estate as next of kin, nor that the heirs or next of kin of said Samuel Flenner authorized the administration.

The only evidence in the record bearing upon the points raised by this assignment is that of John Flenner, as follows:

"I am 80 years old. I knew Samuel Flenner, who served as a soldier in the army of Texas in the war for independence of Texas. I knew him when a child, in my father's family, in Huntington County, Pennsylvania. He was born in that county, and prior to going to Texas he lived in what is now West Virginia. I think he went to Texas in 1837 or 1838. He was a soldier in the Texas Army during the war for independence of Texas, but I don't know the exact time he was there. He wrote home after he was enlisted, and after the close of the war. I saw and read the letters, in which he stated that he was in the Texas Army, and that he would get a quantity of land for his services. After the war he went to Houston City and got into business, and he and another man kept a hotel. When the capital was changed to Austin City he went there, and afterwards joined the Santa Fe Expedition. I do not know how long he lived in different places. He was killed by Indians in the Santa Fe Expedition, on the 20th of July. This information I had from his comrades. After the war for independence of Texas, Samuel Flenner wrote me that he bought property in different places, and even gave the number of the lots. The last time I saw Samuel Flenner was in 1835 or 1836. I understood that Samuel Flenner did live in Harrisburg County, Texas, a short time; and that, I believe, was one of the places he owned lots, but I am not certain. He wrote me that he owned some lots, but I forget the names of towns."

This evidence, we think, is not sufficient to establish the fact that Samuel Flenner was a volunteer in the Texas Army from a foreign country, in the sense intended by the Act of January 14, 1841. It is not of that certain character that should exist in order to defeat the jurisdiction of a court that has apparently in a legal way exercised jurisdiction over a subject that it has the general power to deal with. When a court deals with a subject that falls within its general jurisdiction, and renders orders and decrees that are apparently valid, it is presumed that every fact neces-

sary to exist in order to confer jurisdiction was established to the satisfaction of the court.

If we consider whatever elements of hearsay evidence there may be in the testimony of John Flenner, along with the evidence of any fact that he has testified to, it establishes no more than that Samuel Flenner once lived in Pennsylvania and what is now West Virginia, and that he went to Texas and was a soldier in the war of independence. He says that he thinks he went to Texas in 1837 or 1838, and says that the last time he saw Samuel Flenner was in 1835 or 1836. So far as this evidence tends to establish the contrary, Samuel Flenner may have been residing in Texas at the date of the declaration of independence on the 2nd day of March, 1836, and his citizenship in the Republic of Texas established by section 10, "General Provisions," of the Constitution of 1836. If this be true, and we regard him as a single man, of which fact there is no evidence to the contrary, he would, by virtue of that section of the Constitution, be entitled to one-third of a league as his headright, independent of the fact whether he was a volunteer in the army or not. If there is any recital in the patent or any of the title papers offered in evidence in the court below showing that the character of the certificate issued to Samuel Flenner was for services as a volunteer in the army, it is not shown by any fact stated in the record.

2. It is contended by appellants, in their third assignment of error, that the administration of the estate of Samuel Flenner and the sale of the certificate thereunder are void, for the following reasons:

(1) It does not appear that the Probate Court of Harris County had jurisdiction to administer the estate, because Flenner neither resided nor died in Harris County, nor had he any property there, and that no inventory was ever filed.

(2) It does not appear that any claim against the estate was ever presented, allowed, or approved.

(3) The administration sued out in 1851, more than ten years having elapsed since the death of Flenner, the presumption is, that there were no existing liabilities against his estate, and that the administration was fraudulently obtained and conducted for the purpose of acquiring, without lawful authority, title to the property of the estate.

The proceedings show an administration valid against collateral attack, and we think all of the points raised in this assignment are settled against the contention of appellants in the case of Lyne v. Sanford, 82 Texas, 61, and the cases there cited, and Saul v. Frame, 3 Texas Civil Appeals, 596.

3. The fourth assignment of error is as follows: "The court erred in its fifth and sixth findings of fact; in this, that it does not appear that the certificate described in the administrator's application for an order to

sell, the order, report, or confirmation of sale, is the same certificate by virtue of which the land in controversy was located and patented."

The fifth and sixth findings of fact by the court below are as follows: "That on the 29th day of March, 1852, on application of the administrator, there was an order by said Probate Court to sell the headright certificate of Samuel Flenner. That on the 4th day of May, 1852, said administrator, John H. Isbell, according to law, sold said headright certificate, the same upon which the land in dispute was located and patented, and which was then purchased by W. R. Baker, and the sale duly reported by the administrator and confirmed by the court."

In this connection we will set out the seventh finding of the court, to the effect, "that on the 17th day of March, 1854, the State of Texas issued a patent for one-third league of land—the one in dispute—to the heirs of Samuel Flenner, deceased. That said patent was issued by virtue of the same headright certificate that was sold under said order of the Probate Court of Harris County, and purchased by said Baker."

It appears that the patent was in evidence before the trial court, but its contents are not stated in the record before us. All that we have is simply a statement that the plaintiffs read in evidence a certified copy of the patent to the heirs of Samuel Flenner for the land described in plaintiffs' petition, dated March 7, 1854, reciting that the land was located by virtue of duplicate certificate number $\frac{2375}{2476}$, issued by the Commissioner of the General Land Office on the 16th day of March, 1852. The seventh finding of fact identifies the certificate sold by the administrator as the same headright certificate upon which the patent was issued. In view of this finding, as the patent was before the trial court, we must assume, as there is no evidence here to the contrary, that there was some statement or recital in the patent showing that it was issued by virtue of a location made by the Flenner headright certificate.

If such was the fact, we think it sufficient to show the identity of the land in controversy as that located by the certificate sold by the administrator. The orders relating to the sale describe the certificate as the Flenner headright. There could be only one headright issued to Flenner.

We find no error in the record, and affirm the judgment of the court below.

*Affirmed.*