Argued 30 November; decided 19 December, 1898.

## CLEVELAND OIL CO. v. NORWICH INS. SOCIETY.

[55 Pac. 435.]

1. CONDITIONS OF AN ORAL CONTRACT OF INSURANCE.*—To render binding a contract of insurance, or to insure, there must be a subject-matter to which the policy is to attach, and a risk to be insured against; the amount of the indemnity and the duration of the risk must be definitely fixed, and the premium or consideration must be agreed upon or paid, or exist as a valid legal charge against the insured.

2. PRESUMPTION AS TO EFFECT OF ERROR.—Where error appears in the record, there is no presumption that it was rendered harmless by any subsequent evidence or proceeding. If such was the case the matter showing it should have been included in the bill of exceptions: *Du Bois* v. *Perkins*, 21 Or. 189, followed.

3. EVIDENCE OF CUSTOM—ORAL INSURANCE CONTRACT.—In support of an oral contract of insurance it is competent to prove a custom of insurance companies with reference to the time the risk attaches in such cases.

4. ORAL INSURANCE—PRESUMED RATE.—An agreement to issue, without specifying the premium, is a contract at the usual rate in such cases.

5. ORAL INSURANCE—PRESUMED POLICY—BURDEN OF PROOF.—It will be presumed in support of an oral contract of insurance which was actually made that the minds of the parties met upon an agreement containing the terms and conditions of a policy such as is usually issued by the contracting company covering like risks; but the insured must show those terms and conditions.

6. SUFFICIENCY OF EVIDENCE.—A stipulation entered into on the trial of an action for damages for the breach of an oral contract to insure, which recites that it was admitted that a specified premium was tendered after the loss, and that it was the usual charge by insurance companies for a $1,000 policy, such as described in the complaint, but where no policy was described in the complaint, is insufficient to show the duration of the risk, so as to warrant a recovery.

7. PRACTICE IN SUPREME COURT—PRESUMPTION OF CORRECTNESS.—When the transcript shows that the record below included a paper which may have contained recitals that would sustain the judgment, and which the trial court must have considered in reaching a decision, the appellate court will presume that the judgment appealed from was correct in the absence of such paper: *Fisher* v. *Kelly*, 26 Or. 249, cited.

8. CONCLUSIVENESS OF CERTIFICATE TO BILL OF EXCEPTIONS.—The presumption on appeal that a stipulation not incorporated in a bill of exceptions which may have included recitals which would sustain the judgment did include them yields to the judge's certificate appended to the bill of exceptions, stating that it constitutes all the testimony introduced or received upon the trial, and upon which the respondent relies to sustain the verdict, and that there is no other testimony in the case which can be claimed as tending to sanction said verdict, as the word testimony is broad enough to include evidence.

---

*NOTE.—On the subject of oral insurance contracts, see *Long* v. *North British Ins. Co.*, 21 Am. St. Rep. 883; *Newark Mach. Co.* v. *Kenton Ins. Co.*, 22 L. R. A. 768; *Croft* v. *Hanover Ins. Co.*, 52 Am. St. Rep. 902.—REPORTER.

From Multnomah :   HENRY E. McGINN, Judge.

Action by the Cleveland Oil & Paint Manufacturing Company against the Norwich Union Fire Insurance Society to recover on an oral contract of insurance, and defendant appeals from a judgment against it.

REVERSED.

For appellant there was a brief over the name of *Paxton, Beach & Simon*, with an oral argument by *Mr. Nathan D. Simon*.

For respondent there was a brief over the names of *Daniel J. Malarkey*, and *Starr, Thomas & Chamberlain*, with an oral argument by *Mr. Malarkey*.

MR. JUSTICE MOORE delivered the opinion of the court.

This is an action to recover a fire loss on an alleged oral contract of insurance. The substance of the complaint is that on May 24, 1895, plaintiff was the owner of a stock of paints, oils, varnishes, etc., located in a frame building erected on leased land in Portland, Oregon, and, being desirous of securing indemnity against loss by fire, promised defendant that if it would insure said property for one year from that day, at 12 o'clock noon, plaintiff would pay upon demand the usual and customary rate therefor ; that defendant accepted the offer, and insured the property upon the terms specified, and agreed that a policy evidencing the contract should be forthwith issued ; that on June 2, 1895, said property was damaged by fire to the extent of $9,206.82 ; that prior to the commencement of the action plaintiff tendered to defendant the sum of $32.50, the premium agreed upon, and demanded the delivery of the policy ; but defendant refused to accept the offer or to comply

with the demand, by reason whereof plaintiff has sustained damage in the sum of $1,000. The answer having denied the material allegations of the complaint, a trial was had, resulting in a judgment for plaintiff in the sum of $958.15, and defendant appeals.

It is contended by defendant's counsel that the court erred in admitting certain testimony over their objection, and in refusing to grant a judgment of nonsuit. A stipulation entered into between counsel for the parties was introduced and read in evidence, but is not incorporated in the bill of exceptions. Its contents, however, may be inferred from the following statement made by the court: "Gentlemen of the jury: In this case it has been stipulated by the parties that prior to the commencement of this action the plaintiff in this case tendered to Clemens & McFarland, who were the agents of the Norwich Union Fire Insurance Society—the local agents here at Portland, Oregon—to issue a policy of insurance, the sum of $32.50; that this was tendered within thirty days after the property was destroyed by fire. This is the amount of the premium which would, they say, have been due upon the policy of insurance of $1,000. Therefore there will be no evidence admitted differently. It is also agreed that that premium was tendered to them, and it was not accepted. It is also agreed that Clemens & McFarland were the local agents at Portland, Oregon, of this Norwich Union Insurance Society, and that they were empowered to issue a policy of this kind." Mr. Sears, Counsel for Defendant: "That was a little broader, if your honor pleases, than the statement, I think, of the stipulation. It is admitted that that was tendered, and that that was the usual and customary charge by insurance companies for a policy of $1,000 described in the complaint, and that Clemens & McFarland were the local agents; but it is not stipulated that

they had authority to make insurance of this kind."
The Court: "It is not so stipulated?" Mr. Starr, Counsel for Plaintiff: " Yes, sir." Mr. Sears: "This is the language [reading]: 'That said Clemens & McFarland were the local agents of the defendant at Portland, Oregon, authorized to insure property for and on behalf of the defendant.' There is nothing said as to whether they had authority to make insurance of this kind."
Mr. Starr: " I don't care anything about that." The Court: "So that upon these points, gentlemen of the jury, there will be no proof received contrary to the facts that are stipulated and agreed by the parties."

W. L. Lindhard, being called as a witness, testified, in substance, that he, as plaintiff's manager, operated its store on Front and First and a factory on Fourteenth and Kearney streets, in the City of Portland; that on May 24, 1895, plaintiff was the owner of a stock of paints, oils, etc., located within said factory; and that on said day he entered into an agreement for insurance with defendant; whereupon the following questions and answers were asked and given: "Q. You may state all the conversation that took place at that agreement, where it was, and who was present. A. There was no one present at the time the agreement was made. So I came out of the store, and walked about half a block down to the corner of First and Stark streets, when Mr. McFarland met me, and he halted me, saying, 'I was just going up to your office, to find out if I could renew the policy falling due soon on your store.' I asked him what company he represented. He said, 'The Norwich Union,' and I then said, 'I thought that was Henry Dosch's company.' He said, 'It belongs to me now; it is mine now.' I said, 'You may write that policy, provided you take a similar amount on the stock of the factory. Q. [Cross.] The twenty-fourth of May you are talking about? A. I

could not say as to the dates.    Q. On or about that time?
A. I looked it up after the fire, and we ascertained that
that was about the date.    And he said, 'What do you
want me to write on?' and I told him the stock; that
we had sufficient insurance on both the building and
machinery; and I at the same time told him that he
would not have insurance on the stock of the store, as
we were having some at the factory it was hard to place.
Q. Why did you tell him that?    A. In justice to the
other insurance companies, whom we also made conform
to the same insurance rules.    He said: 'All right; I will
do so.    I will cover it.'    I was then off, and that was all
I ever saw of Mr. McFarland in this case.    Q. Was
there any understanding as to when it was to be covered?
(Objected to.)    A. That is always the understanding of
insurance companies.    The Court: State whether there
was anything said on that subject.    The jury can draw
their own conclusions.    Just state the fact.    Q. What
did he say about covering this policy?    A. He said, 'I
will write the policy.'    That is what he said, and there
was nothing said about time outside of that.    That was
the only time I have spoken to Mr. McFarland about the
matter.''    The witness further testified in relation to the
time when the fire occurred, the value of the stock in the
factory at that time, the damage resulting thereto, and
the amount of insurance thereon, including the sum of
$1,000, which defendant agreed to place.    S. B. Riggen,
being called as a witness for plaintiff, testified that he
had eighteen years' experience as an insurance agent,
whereupon he was asked the following question: ''What
is the general custom among insurance agents in dating
policies that are to be written upon applications which
are made to you orally, or made to insurance agents
orally, and no specified time stated in the application as
to when the policy shall be dated?''    An objection to

this question having been overruled, and an exception allowed, the witness said : "In all cases of that kind it is considered that the insurance is to begin upon the date of the agreement; at noon of the date of the agreement. Q. At noon of the day of the agreement?  A. Yes.  It might be, of course, that the agreement was made in the forenoon.  In my own practice I am always in the habit of dating the policy the day before, in order to cover the fraction of a day."  It was admitted that Henry Hewett and F. L. Richmond, witnesses called on plaintiff's behalf, would testify to the same effect as the preceding witness.  Plaintiff, having introduced the foregoing evidence, rested, whereupon defendant moved the court for a judgment of nonsuit, which being denied, an exception was saved.

1.   It is argued by defendant's counsel that there was no evidence introduced at the trial tending to show the duration of the alleged insurance, the time when the risk should commence, or the amount of the premium to be paid, and hence the nonsuit should have been granted. Plaintiff's counsel insists, however, that, the defendant having introduced evidence after the motion for a nonsuit was denied, which is not included in the bill of exceptions, it must be assumed that any failure of proof on plaintiff's part to sustain the allegations of the complaint was cured by such evidence ; that the time when the insurance should begin was proved by the evidence of the custom of insurance companies in this respect ; and that it is reasonably inferable from the stipulation introduced in evidence by plaintiff that the usual time of insurance upon such risks is one year, and the customary rate on an indemnity of $1,000 thereon is the sum of $32.50.  "In order to make a valid contract of insurance," says Mr. Wood, in his work on Fire Insurance (2 ed.) § 5, "several things must concur :  First,

the subject-matter to which the policy is to attach, must exist; second, the risk insured against; third, the amount of the indemnity must be definitely fixed; fourth, the duration of the risk; and, fifth, the premium or consideration to be paid therefor must be agreed upon, and paid, or exist as a valid legal charge against the party insured where payment in advance is not a part of the condition upon which the policy is to attach. The absence of either or any of these requisites is fatal in cases where a parol contract of insurance is relied upon." It is not the duty of courts to make contracts for parties, but to interpret the engagements they have undertaken, and, in view of this legal principle, the rule is well settled that, before a contract of insurance or to insure can become binding, all these necessary elements must be understood, assented to, and agreed upon, either expressly or by implication, before there can be an absolute binding obligation between the parties : May, Ins. (3 ed.), § 50 ; 11 Am. & Eng. Enc. Law (1 ed.), 282 ; *Commercial Ins. Co.* v. *Morris*, 105 Ala. 498 (18 South. 34); *Sater* v. *Henry Ins. Co.*, 92 Iowa, 579 (61 N. W. 209); *Hartshorn* v. *Shoe Ins. Co.*, 15 Gray, 240 ; *Strohn* v. *Hartford Ins. Co.*, 37 Wis. 625 (19 Am. Rep. 777); *Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 28 N. Y. 153 ; *O'Reilly* v. *London Assurance Corp.*, 101 N. Y. 575 (5 N. E. 568); *Orient Ins. Co.* v. *Wright*, 23 How. 401. When a parol contract of insurance is relied upon to sustain a recovery of damages resulting from a breach of the agreement, or to enforce a specific performance of the terms which have been mutually assented to, the existence of the contract must be conclusively established : *McCann* v. *Ætna Ins. Co.*, 3 Neb. 198 ; *Neville* v. *Merchant's Ins. Co.*, 19 Ohio, 452. In the light of these rules, the evidence introduced by plaintiff will be examined with a view of ascertaining therefrom whether,

considering the same to be true in all respects, it is sufficient to support the verdict and judgment. It will be observed that Lindhard testified that in his conversation with McFarland, defendant's agent, nothing was said about time. The evidence therefore fails to show a meeting of the minds of the representatives of the contracting parties upon the questions as to when the risk should attach, or the duration thereof, unless these facts are inferred from the stipulation, or implied from the ordinary course of business.

2.   The contention that defendant's testimony, introduced after the motion for a nonsuit was overruled, may have supplied the deficiency in plaintiff's evidence, is without merit; for defendant, having incorporated in the bill of exceptions the evidence introduced prior to the court's action upon the motion, has brought up for review the question passed upon, and if it appear therefrom that the court erred in its disposition of such question, the error will be presumed to be judicial, and, this being so, it was the duty of plaintiff to include in the bill of exceptions those portions of the evidence given by defendant, if any, tending to supply such deficiency: *Du Bois* v. *Perkins*, 21 Or. 189 (27 Pac. 1044).

3.   Assuming, as we must, from the verdict of the jury, that an agreement was entered into between Lindhard and McFarland respecting an insurance of $1,000 upon the stock located in the paint factory, that the risk was to attach on the day the contract of insurance was consummated, which fact may have been reasonably inferred from the evidence, though nothing was said by the parties in relation thereto, how can it be said from Lindhard's testimony that the duration of the risk was one year, or any other period? Ostrander, Fire Ins. p. 17, in referring to the elements of an insurance contract which must concur, as hereinbefore quoted from Wood, Fire

Ins., says : "We think Mr. Wood should have added also that the contract must be· *in præsenti.*" It has been held that, if nothing be said by the parties to an oral contract for insurance about the time when the undertaking becomes operative, the risk attaches and takes effect immediately upon the consummation of the agreement : *Potter* v. *Insurance Co.,* 63 Fed. 382. And in the case at bar we are of the opinion that no error was committed in permitting the witness to testify in relation to the custom of insurance companies in this respect for the purpose of explaining what was reasonably implied from the failure of the parties to specify the time when the insurance would take effect.

4. An agreement to insure, without specifying the premium to be paid, is held to be a contract to insure at the customary rates : Wood, Fire Ins. § 27 ; *Walker* v. *Metropolitan Ins. Co.,* 56 Me. 371 ; *Newark Mach. Co.* v. *Kenton Ins. Co.,* 50 Ohio St. 549 (22 L. R. A. 768, 35 N. E. 1060); *Salisbury* v. *Hekla Ins. Co.,* 32 Minn. 458 (21 N. W. 552); *Michigan Pipe Co.* v. *North British Ins. Co.,* 97 Mich. 493 (56 N. W. 849). Under this rule the stipulation introduced in evidence shows the usual rate upon such risks, and explains what was implied by the agreement in this respect.

5. So, too, the law will presume that the minds of the parties met upon an agreement containing the terms and conditions of a policy such as is usually issued by the contracting insurance company covering like risks : 1 May, Ins. (3 ed.), § 23 ; *Barre* v. *Council Bluffs Ins. Co.,* 76 Iowa, 609 (41 N. W. 373); *Smith* v. *State Ins Co.,* 64 Iowa, 716 (21 N. W. 145); *Hubbard* v. *Hartford Ins. Co.,* 33 Iowa, 325 (11 Am. Rep. 125); *De Grove* v. *Metropolitan Ins. Co.,* 61 N. Y. 594 (19 Am. Rep. 305); *Eureka Ins. Co.* v. *Robinson,* 56 Pa. St. 256 (94 Am. Dec. 65); *Fuller* v. *Insurance Co.,* 36 Wis. 599 ; *Salisbury* v. *Hekla*

*Ins. Co.*, 32 Minn. 458 (21 N. W. 552).   But to support an action for damages resulting from a breach of such an agreement evidence must be introduced which tends to show, so far as necessary to sustain plaintiff's case, the terms and conditions usually contained in a policy issued in such cases.

6.   There is an entire lack of evidence tending to show the duration of insurance issued by the defendant company upon risks similar to that in the case at bar, or as to what time would be implied in a contract of insurance when nothing had been said by the parties upon the subject, unless these facts are to be inferred from the stipulation in question.   Defendant's counsel, referring to the premium of $32.50 which was recited in the stipulation, says : "It is admitted that it was tendered, and that that was the usual and customary charge by insurance companies for a policy of $1,000 described in the complaint." An insurance policy is the written evidence of an agreement by the terms of which the insurer, in consideration of a stipulated premium, undertakes to indemnify the insured against such damage as he may sustain by reason of injury to or destruction of the subject-matter by means of the risk insured against.   No policy is described in the complaint, but defendant's counsel undoubtedly meant that the sum of $32.50 was the customary premium upon a policy for the stipulated indemnity covering the stock of paints, oils, etc., within the paint factory, for the term of one year, from May 24, 1895, at 12 o'clock noon.   So far as this language is concerned, it amounts to an admission that the usual premium for a given time and risk had been tendered ; but nothing is said, however, in relation to the terms of the policy issued by the defendant company in such cases, and, so far as the evidence or admission is concerned, it may be that its policies were issued for greater or less periods than one year.

7.  It is insisted by plaintiff's counsel, however, that the elements of the agreement for insurance are presumed to have been contained in the stipulation which was received in evidence, and that, defendant having failed to incorporate it in the bill of exceptions, it should be held, in order to uphold the judgment, that the facts necessary to prove the case were established thereby.  It is a rule of practice that when the transcript shows that the record contained a paper which may have included recitals that would sustain the judgment, and which the court was bound to consider in rendering its decision, the appellant must include such paper in the bill of exceptions, and, if he does not do so, the appellate court will presume that the judgment appealed from is correct: *Fisher* v. *Kelly*, 26 Or. 249 ( 38 Pac. 67) ; *Huffaker* v. *Bank*, 13 Bush, 644 ; *Bowman* v. *Holloway*, 14 Bush, 426 ; *Elliott* v. *Round Mountain Iron Co.*, 108 Ala. 640 (18 South. 689); *City of Covington* v. *Chesapeake & Ohio Ry. Co.* (Ky.), 20 S. W. 538 ; *McNew* v. *Williams* (Ky.), 36 S. W. 687 ; *Eastin* v. *Ferguson*, 4 Tex. Civ. App. 643 (23 S. W. 918); *Flenner* v. *Walker*, 5 Tex. Civ. App. 145 (23 S. W. 1029).

8.  But the presumption invoked in such cases is not conclusive, and must yield to evidence which overcomes it.  In the case at bar the judge appended to the bill of exceptions the following certificate : ''The foregoing constitutes all of the testimony of plaintiff herein introduced or received upon the trial of this cause, and upon which it relies to sustain the verdict, and there is no other testimony in the case, introduced by either plaintiff or defendant, tending to sanction, or which can be claimed as tending to sanction, said verdict.''  While this certificate refers to testimony only, in our judgment it is broad enough to include evidence, and, this being so, it overcomes the presumption which is sought to be

indulged, and shows that the verdict is not supported by the evidence ; and hence it follows that the judgment is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.

REVERSED.