## D. D. RUSSELL v. GEORGE E. O'CONNOR.[1]

December 20, 1912.

Nos. 17,747—(85).

**Agreement to procure insurance.**

Instruction given by a property owner to an insurance agent to "write out a thousand dollars insurance" on a certain building, and the agent's acceptance thereof by saying that he would "attend to that right away," *held*, under the facts of the case and in view of the prior course of dealing between the parties, to create a contract whereby the agent undertook to use reasonable diligence to procure the insurance and seasonably to notify the plaintiff in the event of the failure of such attempt, though, by reason of the condition and status of the building, the agent had no authority to write the insurance at the time of the conversation.

1 Reported in 139 N. W. 148.

**Question of breach for jury.**

Evidence in an action for the breach of such contract considered, and *held* sufficient to take the case to the jury upon the question as to whether the defendant fulfilled the obligations imposed upon him by the said agreement.

**Uncontradicted evidence.**

The fact that the defendant's evidence, in such action, tending to show that he fulfilled his obligations under the contract, was uncontradicted by other evidence, did not require either the court or the jury to accept the defendant's contention in such regard as established, where such evidence was itself contradictory, and the defendant also failed to produce other evidence at his command to sustain his claim.

**Prejudicial error in charge to jury.**

Instruction in such action *held* to constitute error prejudicial to the defendant, in that it was calculated to lead the jury to believe that the defendant could be held liable on the theory that he had authority to write the insurance at once and failed so to do, or that his liability depended upon. whether a policy written by him at such time would have bound his principal, the insurance company.

Action in the district court for Itasca county to recover $1,000 for breach of an agreement to place fire insurance upon a certain building. The answer was in effect a general denial. The case was tried before Stanton, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed and new trial granted.

*C. C. McCarthy,* for appellant.

*Spear & Stone,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages, in the sum of $1,000, for the breach of a contract to obtain insurance on the plaintiff's building. The plaintiff had a verdict, and the defendant appealed from an order refusing to grant him a judgment notwithstanding the verdict or a new trial.

The complaint is to the effect that the defendant was, at all times here material, a fire insurance agent, engaged in such business at Co-

leraine, and representing several fire insurance companies, the names and number thereof being unknown to the plaintiff, and, further, that on October 18, 1909, the plaintiff, being the owner of a building situate on lots 22 and 23, in block 2, of Bovey, of the value of $2,500, entered into an agreement with the defendant wherein, in consideration of the plaintiff's promise to pay the premiums, the defendant agreed to insure forthwith this building against loss by fire in the sum of $1,000 in one or more of the companies represented by him as agent, and to deliver the policies to the plaintiff, all of which he failed and neglected to do, whereby the plaintiff was damaged in the sum of $1,000 when his building was destroyed by fire on October 25, 1909. The answer admitted that during the time stated the defendant was engaged in business as a fire insurance agent at Coleraine, and placed in issue all other averments of the complaint.

The uncontroverted evidence established the plaintiff's ownership of the building, the failure of the defendant to cause it to be insured, the destruction thereof by fire on October 25, 1909, and that its value exceeded $1,000. The evidence also established the following facts: On the dates mentioned the plaintiff's building, and also certain other adjacent buildings which constituted exposures, were unfinished, and the plaintiff's building contained inflammable materials, and constituted a risk known in insurance parlance as a "special hazard;" that the building had not been rated for insurance, and that the defendant was without authority to write insurance thereon in any of the companies represented by him until the rate had been fixed by the directing officers or agents of such companies, after which, upon notice thereof, he could have written what is known as a "builder's risk" upon the building. All of these facts were known to the defendant at all times mentioned. It furthermore conclusively appeared that the defendant was a resident of Coleraine, and cashier of the First National Bank of Coleraine. This village is connected by telephone with Bovey, about a quarter of a mile distant, where the plaintiff lived. The defendant did an insurance business in both places. Prior to October, 1909, the defendant had written four insurance policies, each for the term of one year, on properties of the plaintiff in Bovey or Coleraine, without the plaintiff's designation

of the companies which were to carry the same, and these policies had been delivered to the plaintiff without his paying the premiums in cash, a bill being thereafter rendered therefor.

In addition to the foregoing, there was evidence from which the jury might well have found, notwithstanding the defendant's denials in this regard, that the plaintiff's wife, pursuant to his instructions, on October 18, 1909, telephoned the defendant at Coleraine that the plaintiff had gone away early that morning, and wanted her to advise the defendant "to write out a thousand dollars insurance on that building we had in Bovey, lots 22 and 23, on block 2," and that the defendant replied, "Thank you, Mrs. Russell; I will attend to that right away;" and that subsequently no communication occurred between the parties until after the fire. It appeared from the defendant's own testimony that, at the time he had conversation with Mrs. Russell, he knew what building was referred to by her, that it was new and unfinished, and constituted a "hazardous risk," upon which a rating would have to be obtained from agents either at St. Paul or Duluth before it could be insured, and that such insurance could issue for only one year.

1. The first question is whether the telephone conversation between the defendant and the plaintiff's wife created a contract, and, if so, what was its nature and legal effect? The defendant contends that this conversation created no contract whatever, and placed him under no legal obligation to the plaintiff, for the reason, among others, that the plaintiff's building was not insurable as contemplated by him, or as requested by him, the same being unfinished, unrated, and a "special hazard," on which the defendant was not authorized to write insurance in any of his companies. If this conversation occurred, which, as we have held, was a question for the jury, we have no doubt that a contract was created. There was evidence tending to show that the defendant represented a number of companies, and had previously written several policies for the plaintiff on other properties, as before stated, himself selecting the companies and delivering the policies previously to the payment of the premiums, which were subsequently paid by the plaintiff on demand. The defendant's claim that no contract resulted, based on the contention that the failure to

agree upon the premium prevented a meeting of minds sufficient to contract, is untenable. The relation between the parties arising from the conversation created an implied obligation on the plaintiff's part to pay the premium, if the policy had been written. Campbell v. American, 73 Wis. 100, 109, 40 N. W. 661. Beyond question, in such event, the plaintiff could have been compelled by action to pay the premium.

The further objections urged by the defendant in this regard, based upon the condition and status of the building, and others of the same character, are immaterial upon the question of the existence of the contract; for he has confused the question of his power to make the contract which actually resulted from the conversation with his authority actually and forthwith to write a policy under the then existing conditions. The matters thus urged as objections to the existence of the contract really go to the nature thereof, which we will next consider; and this distinction must be kept in mind to avoid confusion concerning the rights and duties of the parties. The controlling question is not whether the defendant had the right, by reason of any authority from his companies, to insure the property or to bind such companies, but whether, with knowledge of the condition and status of the property and surrounding circumstances, he bound himself to procure insurance for the plaintiff. It could not be seriously claimed that he had no authority to bind himself to fulfil the obligation which the law superimposed as the result of the conversation between himself and the plaintiff's wife. Rainer v. Schulte, 133 Wis. 130, 133, 113 N. W. 396.

The next question, then, is: What duty did the defendant owe to the plaintiff under the contract so made? At the outset we will say, without further comment, that it did not require him to violate his instructions from the companies he represented. The relation created, however, constituted the defendant an insurance broker, and as such he undertook to use reasonable diligence to get the property insured; that is, upon the facts of this case, he undertook to have the property rated and to take all other steps necessary to authorize him to write the policy, and in the event of his being unable to protect the plaintiff's property by insurance, then seasonably to notify

the plaintiff of his inability so to do, which time, however, did not begin to run until he had had a reasonable time in which to ascertain, by the exercise of ordinary diligence, whether he could place the insurance. Backus v. Ames, 79 Minn. 145, 81 N. W. 766; Everett v. O'Leary, 90 Minn. 154, 95 N. W. 901; Campbell v. American, supra; Rainer v. Schulte, supra; 16 Am. & Eng. Enc. (2d ed.) 970; 22 Cyc. 1427.

2. Applying this rule to the facts of this case, we think it was a question for the jury whether the defendant fulfilled his obligations to the plaintiff, both as to the exercise of reasonable diligence to get the property insured, and as to notifying the plaintiff of his inability so to do, notwithstanding the defendant's claim that the evidence conclusively so established. See Rainer v. Schulte, supra. This case involved facts strikingly similar to those of the case at bar. The instant case is, indeed, much stronger in the plaintiff's favor, and yet in that case the question of the defendant's performance of his obligations to the plaintiff was held to be for the jury. Said the court at page 133 [1] [133 Wis.] after adverting to the defendant's agreement to procure insurance on the defendant's building forthwith: "If such was in fact the agreement made, then it was immaterial whether the defendant at the time had authority to represent and bind some unnamed insurance company or some insurance agent. * * * The defendant certainly had authority to bind himself to procure such insurance. The evidence tending to prove that the defendant made such contract was sufficient to take the case to the jury. According to such evidence the insurance was to be procured 'forthwith.' Of course, the defendant was entitled to a reasonable time within which to procure the same. The plaintiff's claim was that the contract was made October 18, 1904, and that the fire occurred on the morning of October 20, 1904. We have had some doubt whether it ought not to be said, as a matter of law, under the circumstances disclosed in the evidence, that such delay in procuring such insurance was not unreasonable. But the question whether such delay was reasonable or unreasonable was one of fact, and it was fully and fairly submitted to the jury by the trial court. The court refused to set aside the verdict, and we cannot say that it is not sustained by the evidence."

[1] 113 N. W. 397.

Without either approving or disapproving this case, we call attention to this fact that in the instant case the delay was considerably longer than in the case above referred to, and there must have been frequent mail service between Coleraine and Duluth. We do not think, therefore, that it was error to submit this phase of the case to the jury.

In addition to the facts already recited, the defendant claims that, on the same day he had the conversation with the plaintiff's wife, he wrote from Coleraine to the rating agents of the companies he represented, at Duluth, for a rating on the plaintiff's building, and that he received no response to his communication until after the fire, which communication and the answer thereto were in writing; the latter giving a rating on the building. It appeared in this connection that it was the custom of rating agents, when a rate was established on a building, to send the same, not only to the agent who asked for it, but also to other insurance agents in the vicinity of the risk. The defendant testified in his own behalf, but failed to produce either his communication to the rating agents or their response thereto. None of the other agents, though several were witnesses, testified to the receipt of the rating, or that none such was received. It furthermore appeared that subsequently to a written demand made by the plaintiff for the payment of the amount of this insurance the defendant, on December 12, 1910, advised the plaintiff in writing that he, the plaintiff, had made no application previously to the fire for any insurance on the building destroyed; and on February 18, 1911, the defendant made the same claim in response to a letter from the plaintiff's attorneys, and further stated that the plaintiff had asked the defendant to place insurance on the building erected after the fire. But, notwithstanding these letters, the defendant admitted on the trial that he did have a conversation with the plaintiff's wife, at the time claimed by her, concerning the insuring of the building. In view of the contradictory character of the defendant's evidence, neither the court nor the jury were bound to believe it, and therefore were not bound to accept the defendant's contention as to his efforts to obtain a rating on the plaintiff's building, though it was uncontradicted. Lang v. Ferrant, 55 Minn. 41ᵥ, 57 N. W. 140; Ken-

nedy v. McQuaid, 56 Minn. 450, 58 N. W. 35. And likewise the jury had the right to consider the defendant's failure to produce the: writings claimed to have been received by him concerning the rating: of this building, and the presumption arising from such failure, un-- der the rule announced in Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 452, 74 N. W. 166, 70 Am. St. 341. See also Tegels v. Great Northern Ry. Co. supra, page 31, 138 N. W. 945.

3. The trial court, in the last paragraph of the charge, instructed the jury as follows:

"Counsel has called my attention to a portion of the charge which I have given you, and his recollection of the charge differs from my own recollection, and differs from my intention; so I think I will again refer to that portion of the charge. I intended to say to you, and I think I did say to you, that the evidence shows that there had been no rate placed on this building, and that from all the evidence in the case it would be for you to determine whether the defendant could, under his authority as agent for any of these fire insurance companies, write insurance upon that building so that it would be effective without a rate having been made upon it. I say, it will be for you to determine from the testimony whether he could have written the insurance without its first having been rated."

This instruction was excepted to by the defendant, and constituted reversible error. It did not present the true issue, in that the jury were told, in effect, that the defendant's liability depended upon the contingency of whether, had he written the insurance, his company would have been bound thereby, and also that his liability to respond in damages in this action depended upon his authority to write the insurance upon an unrated risk. The instruction was erroneous in both of its branches, and is out of line with the substantive principles upon which, as above announced, the rights of the parties depend, thus confusing the issues to such an extent that we cannot say that the jury was not misled thereby. It is impossible to determine how the jury arrived at their verdict. Under this instruction they might have concluded that the defendant should have been held liable because of his failure to write the insurance on the ground that he had

authority to do so, or that his liability depended on whether a policy written by him would have bound his principals, neither of which theories would sustain a verdict.

4. In view of the fact that the case must go back for another trial, we will refer to some of the alleged errors in the admission of evidence. The defendant's objections that the conversation between the plaintiff and his wife, in which he authorized her to apply to the defendant for insurance, constituted hearsay, were properly overruled. The authority of the defendant, concerning all matters relating to insurance, must be established with reference to his contract with his principals, and according to his actual and implied authority under the law of agency, and not by the opinions of alleged experts as to what he had the right to do as an insurance agent.

Order reversed, and new trial granted.