26 N.J. Super. 201 (1953)
97 A.2d 732
THERESA MARANO, TRADING AS MINA'S LIQUORS, PLAINTIFF-RESPONDENT,
v.
THOMAS P. SABBIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1953.
Decided June 10, 1953.
*202 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Sigmund Auerbach argued the cause for the plaintiff-respondent.
*203 Mr. John J. Corcoran, Jr., argued the cause for the defendant-appellant.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
Plaintiff's action is for breach of defendant's oral agreement to "bind himself to secure the plaintiff against any burglary of cash from plaintiff's premises to the extent of $1000." The Hudson County District Court, sitting without a jury, held that the oral agreement was valid and enforceable and awarded damages in the sum of $750. The defendant appeals from the ensuing judgment.
The appeal has been submitted on a statement of the evidence and proceedings in lieu of stenographic transcript under Rule 1:2-23.
The plaintiff's husband, Jerry Marano, a member of the New Jersey Bar, was the only witness for the plaintiff. Marano, who shared offices with Sabbio, testified that on November 28, 1951, when his wife purchased the business in question, he submitted various insurance policies which the prior owner carried on the premises to the defendant, an insurance broker, requesting the defendant to cover the wife's store with insurance of the same types; that he specifically said to the defendant that he wanted robbery insurance on his wife's store and the defendant responded by saying "You're covered"; that on or about December 9, 1951, when he received and paid for the plate glass and liability compensation policies from the defendant, he said to the defendant, "What about the robbery policy?"; that the defendant replied "There is a binder on it  you're covered," but that the policy had not been received from the company; that he offered to pay for the premium on the burglary insurance, but defendant told him to wait until he delivered the policy; that he informed the defendant of the burglary loss that had occurred on March 21, 1952, whereupon the defendant prepared a proof of loss form; that about two months later he asked the defendant about the payment of the loss and the defendant then made out another proof of loss form with the name of the insurance company omitted and in *204 which the figure of $750 appeared. It finally developed that the defendant had failed to negotiate any contract for burglary coverage.
The defendant, the only witness in his behalf, testified that among the policies belonging to the prior owner which Marano brought to him, was a burglary policy, and Marano stated he wanted such insurance coverage as was needed; that he told Marano that he could get him covered on all the types of insurance but not for burglary, stating to him that "This burglary policy will be tough"; that he unsuccessfully made application through three underwriters of insurance for burglary coverage on the plaintiff's premises; that neither on December 9, 1951, nor at any other time, when paid the premiums for the other policies, was he paid for any burglary insurance coverage. Sabbio denied that he prepared or made up any proof of loss form on March 24, 1952, or at any other time.
At the conclusion of the plaintiff's case and at the end of the entire case, the defendant unsuccessfully moved for judgment of dismissal on the ground that if the court construed the dealings between the parties to be an agreement by the defendant to secure the plaintiff from a loss by burglary, such an agreement would be void as against the public policy of this State, which by law prohibits an individual from engaging in the business of insurance without authority from the Commissioner of Banking and Insurance and makes it a misdemeanor to do so, and that such an agreement came within the statute of frauds and, not being in writing was, therefore, void.
The defendant contends that the court erred: (1) in denying the two motions for judgment of dismissal; that there was no binding agreement between the parties because there was no consideration shown; (2) in finding that the agreement was absolute in nature, that the defendant would secure burglary insurance coverage from an authorized company; (3) in finding that the defendant breached his agreement, and (4) in excluding certain letters received from *205 agencies concerning the insurance in question and their unwillingness to write the policy.
The trial court found that the oral undertaking of the defendant was, in fact, an agreement to secure insurance in an authorized company rather than an agreement, as defendant urges, to try to secure insurance; that defendant breached his contract and, as a result of the robbery, plaintiff suffered damages to the extent of $750.
While the plaintiff's complaint is inartistically drawn, the purport of the allegations are that the defendant agreed to secure burglary insurance to protect the plaintiff against loss of cash in the cash register. In fact, this was the issue before and decided by the trial court.
The general and settled rule throughout the United States appears to be that when a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and who negligently fails to do so, will be held liable for any damage resulting therefrom. The broker is liable on the theory that he is the agent of the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in effecting the insurance; that the promise to take the policy is a sufficient consideration and if the broker neglects to procure insurance or does not follow instructions, or otherwise fails to act with the proper and customary skill and care generally used by those in a like business, such neglect or breach of duty will render him liable in damages, not exceeding the amount of insurance that he was employed to effect. It has been held that a principal may sue either for breach of contract or in tort for a breach of duty. 16 Appleman, Insurance Law and Practice, sec. 8841, pp. 300-301. See also Johnson v. Otta, 340 Ill. App. 270, 91 N.E.2d 468 (App. Ct. 1950); 18 A.L.R. 1214-1220, and collected cases cited therein. The payment of the premium is not necessary to the validity of a contract by an insurance broker to procure insurance, and such an action for breach of such an agreement may not be defeated merely because payment of the premium was not made. Rochis v. Milascewicz, 211 *206 Ill. App. 262 (App. Ct. 1918). Where one undertakes to effect insurance in accordance with instructions, he impliedly undertakes to give notice to the owner in the event of his failure to procure such insurance. Callander v. Oelrichs, 5 Bing. N.C. 58 (C.P. 1838); Gardner v. Hermann, 116 Minn. 161, 133 N.W. 558 (Sup. Ct. 1911); Russell v. O'Connor, 120 Minn. 66, 139 N.W. 148 (Sup. Ct. 1912). The promise by a property owner to take a policy of insurance, for the securing of which he employs a broker, has been declared to be a sufficient consideration for the broker's undertaking to carry out his instructions with respect to the policy. 29 Am. Jur., Insurance, sec. 108, pp. 130-131. See also, 44 C.J.S., Insurance, sec. 172, p. 861.
The New Jersey rule seems to be in accord with the general rule, as will appear from the case of Milliken v. Woodward, 64 N.J.L. 444 (Sup. Ct. 1900), where it is stated at p. 448:
"The defendants were exercising the particular employment of fire insurance brokers, and thus holding themselves out to the world as possessing sufficient skill requisite to the calling, and if ordinary skill and diligence is not exercised, the neglect is actionable if it proximately results in loss or damage. Beach Cont., § 658, and cases cited.
A broker is a specialist employed as a middleman to negotiate between the parties to a sale or other business contract, and they must exercise customary skill in the preparation of such documents as are requisite to effectuate the business which they have in hand. Wheat. Agency, §§ 205, 605."
The Milliken case was favorably commented upon in Grossman v. Calonia Land and Imp. Co., 103 N.J.L. 98, 103 (E. & A. 1926). Cf. Colpe Investment Co. v. Seeley & Co., 132 Cal. App. 16, 22 P.2d 35 (App. Dist. 1933), and citations appearing in 132 Cal. App. at page 19, 22 P.2d 36; also, Meiselman v. Wicker, 224 N.C. Rep. 417, 30 S.E.2d 317 (Sup. Ct. 1944).
The trial court sitting as judge and jury necessarily passed upon and determined the factual issues. It obviously accorded credibility to the testimony of the plaintiff's witness in determining the terms and conditions of the agreement *207 between the parties. The testimony was in sharp conflict and the court had the opportunity to see and hear the witnesses and was in a better position to pass upon their credibility. Under Rules 1:2-20 and 4:2-6, we are cautioned to give "due regard * * * to the opportunity of the trial court to judge of the credibility of the witnesses." A careful scrutiny of the statement of evidence furnished to us convinces us that there is no justification for the making of new findings of fact.
There is no necessity to discuss at length the defendant's contentions that the agreement was violative of the statute of frauds. We find, as did the trial court, that the agreement was not an engagement by the defendant to personally insure the plaintiff or indemnify her against loss by burglary and, therefore, not being in writing, was violative of the statute of frauds, but that the agreement in question was clearly an undertaking by the broker to negotiate the policy of burglary insurance and, having failed to do so, he thereby breached his agreement.
Nor do we find any error in the court's exclusion of the letters which the defendant sought to introduce from insurance agencies indicating their unwillingness to write the policy. The defendant testified as to the contents thereof and we do not find that the defendant suffered prejudicial harm by their exclusion.
"A new trial shall not be granted for misdirection, the improper admission or exclusion of evidence, or for error as to matters of pleading or procedure, unless, after examination of the whole case, it appears that the error injuriously affected the substantial rights of a party." Rule 1:2-20 (b), supra.
In view of our holding, it becomes unnecessary to discuss the defendant's contention that the defendant's agreement was the transaction of the business of insurance by an unauthorized person and as such prohibited by law and unenforceable.
Accepting the plaintiff's version, as did the trial court, as being the more credible one, it clearly appears that the defendant was engaged by the plaintiff to negotiate with an *208 insurance company for the issuance of a burglary policy; that he specifically undertook to do so, assuring plaintiff that she was protected by a binder and that she was "covered" against any loss and that payment therefor could be made upon delivery of the policy; that the defendant was under a duty to exercise the customary skill and diligence required of him in the procuring of such a policy in conformity with the agreement with the plaintiff; that he failed to notify plaintiff that he could not obtain such a policy, but on the other hand, lulled plaintiff into believing that she was at all times protected pending the receipt of the policy, therefore, he breached the agreement when he failed to procure the policy according to the instructions of plaintiff's agent. Milliken v. Woodward, supra.
Judgment affirmed.