Argued April 7, reversed and remanded May 11, petition
for rehearing denied June 7, 1960

# HAMACHER *v.* TUMY ET AL

352 P. 2d 493

*Ervin B. Hogan* and *O. J. Frohnmayer*, Medford, argued the cause for appellant. On the briefs were Neff, Frohnmayer & Lowry, Medford.

*George M. Roberts* argued the cause for respondents. On the brief were Roberts, Kellington & Branchfield and Robert D. Heffernan, Jr., Medford.

Before ROSSMAN, J., Presiding, and O'CONNELL, GOODWIN and HARRIS, Justices.

O'CONNELL, J.

The plaintiff brings this action against Earl S. Tumy and Gilbert S. Tumy, co-partners, engaged in a general insurance agency business, to recover damages resulting from the alleged failure of the defendants to procure insurance on certain buildings and equipment owned by plaintiff. Plaintiff appeals from a verdict and judgment for the defendants.

The plaintiff is the owner of a sawmill and planing mill in Jackson County, Oregon. The mill was originally owned by Talent Sawmills, Inc., a corporation. The corporation was dissolved in the summer of 1955 and all of the assets were distributed to plaintiff. At the time the mill was owned by the corporation the plant buildings and equipment were insured against

fire for the aggregate amount of $170,000 through the issuance of several policies. This insurance was continued by endorsement after plaintiff became owner of the mill property. Each of the policies contained a co-insurance clause limiting the insurance carrier's liability to the proportion of any loss which the total amount of insurance bore to 90% of the actual cash value of the insured property at the time of loss.

During the latter half of 1955 plaintiff made substantial improvements and additions to the plant. In September, 1955, an appraisal was made of the plant buildings and equipment. That appraisal showed an insurable value of $226,290.16. Subsequent improvements were made which brought the value of the plant above the value shown by the appraisal.

On January 4, 1956, plaintiff and defendant Gilbert Tumy met in plaintiff's office to discuss the matter of securing additional insurance. They had before them the appraisal report made in September, 1955, showing a total insurable value of $226,290.16. Both parties knew that the appraisal did not cover improvements made by plaintiff after the appraisal had been made. Gilbert Tumy then suggested that additional insurance be procured. Plaintiff testified that Tumy suggested that the additional insurance be obtained to bring the total insurance to 95% of the insurable value shown on the appraisal, thus providing a safety factor of 5% over the 90% clause then in effect. Tumy testified that he suggested that the insurance be increased to 95% of the then insurable value, which value was not then known because the value of the improvements made subsequent to the appraisal was not known, and because the total given in the appraisal report included values which were not covered by the policies already issued to plaintiff. After Tumy had suggested the in-

crease to 95% plaintiff said "he thought that was a good idea; he would do that." Tumy claims that he then made arrangements with plaintiff to take the appraisal report back to Tumy's office "for study to try to determine the insurable value of his property," and to return the following morning for a continuation of their conference. The conference was not held and on the morning of January 6, 1956, plaintiff's property was damaged by fire to the extent of $174,166.58. The defendants had not procured additional insurance and plaintiff recovered only $139,396.29 under the policies which were in force at the time of the fire.

The principal assignment of error is directed at the following instruction to the jury:

"It is the law that an insurance agent or broker who, for a consideration, agrees to procure insurance for another, will be liable for any damage resulting from an unjustifiable breach of the agreement. It is further the law that a contract to procure insurance must be proved with the same certainty as an oral contract of insurance or agreement to insure, and that the essential elements of an agreement—of an oral contract of insurance or to insure are five in number: First, the subject matter to which the policy is to attach must exist; second, there must be a risk insured against; third, the amount of the indemnity must be definitely fixed; fourth, the duration of the risk must be known; and, fifth, the premium or consideration to be paid therefor must be agreed upon and paid or exist as a valid legal charge against the party to be insured. The absence of either or any of these requisites is fatal in cases where an oral contract of insurance is relied upon."

Plaintiff contends that the instruction is erroneous in stating that a contract to procure insurance must be proved with the same certainty as a contract of in-

surance or an agreement to insure. A further and separate exception is taken to that part of the instruction which states in effect that plaintiff must prove the amount of the premium agreed to be paid.

The parties are in agreement upon the general proposition that an insurance broker who is employed as agent by the insured to procure insurance owes a duty to his principal to exercise reasonable skill and care to obtain the insurance coverage ordered by his principal. *Rodgers Insurance Agency v. Andersen Machinery,* 211 Or 459, 316 P2d 497 (1957); *Lawrence v. Francis,* 223 Ark 584, 267 SW2d 306 (1954); *Russell v. O'Connor,* 120 Minn 66, 139 NW 148 (1912); *Marano v. Sabbio,* 26 N J Super 201, 97 A2d 732 (1953). The parties are in disagreement, however, as to the character of the evidence which must be adduced by the plaintiff in order to establish the contract out of which the defendants' duty arises. The instruction states defendants' position, i.e., that the plaintiff must prove the essential elements of an oral contract for insurance in order to meet the requirement of proof for a contract to procure insurance. Plaintiff argues that something less than this is sufficient.

■ Very probably the instruction was fashioned out of the language in *Rodgers Insurance Agency v. Andersen Machinery,* supra. In that case it was said at page 469 that "a contract to procure insurance should be proved with the same certainty as an oral contract of insurance or agreement to insure." The court then went on to set out the "essential elements" of a contract of insurance stated in *Cleveland Oil Co. v. Ins. Society,* 34 Or 228, 233, 55 P 435 (1898), and later in *Cernio v. Oregon Physicians' Service,* 202 Or 474, 276 P2d 397 (1954). In the Rodgers case an insurance agency

brought an action to recover certain insurance premiums alleged to be due from the defendants. The defendants counterclaimed alleging that the plaintiff breached an agreement to procure insurance for the plaintiff and that as a result of the failure to procure insurance defendants suffered a loss of certain equipment not covered by insurance. The equipment was lost in a flood. The insurance which plaintiff agreed to procure was for "any contingency that might arise on rental fees, fire, upset, theft, or mysterious disappearance." As the court pointed out, the loss by flood was not within the list of risks which defendant claimed had been agreed upon. Moreover, the agreement left uncertain other elements of a valid contract. The court said at page 470:

> "No testimony was offered to prove either the amount of the indemnity, the duration of the risk or the premium to be paid for the policy. The evidence was even indefinite as to the property to be insured, although it might be inferred therefrom that the policy was to cover all machinery owned by the defendant and rented to others."

The Rodgers case simply holds that the insurance agent is not liable for the failure to procure insurance unless the parties agree upon the type of insurance which is to be procured. The case may also be regarded as standing for the elementary legal proposition that a contract will not arise until there is sufficient certainty in the proof of its terms. This proposition would, of course, be equally applicable to contracts to procure insurance and contracts of insurance. The Rodgers case does not hold that the manner of proof is the same for both contracts to procure insurance and contracts of insurance. The court was not called upon to differentiate these two types of transactions.

Must the promisee of a contract to procure insurance prove all of the essentials of a contract of insurance with the same specificity that is required of a promisee asserting the existence of a contract of insurance? The instructions to the jury could be taken to mean that plaintiff was required to prove each of the enumerated elements of a contract of insurance by showing that the parties came to an agreement with respect to each of these separate elements.

We are of the opinion that the instruction so interpreted placed upon the plaintiff too heavy a burden of proof. Where a person seeks to enter into a contract of insurance with an insurance company or its agent it is understood that the negotiations will not ripen into a contract until the parties arrive at an agreement as to all of the elements which are essential to an insurance contract, including the subject matter to be covered, the risk insured against, the amount of the indemnity, the duration of the coverage and the premium. See *Cleveland Oil Co. v. Ins. Society,* supra. In entering into a contract to procure insurance, obviously the owner is seeking the same ultimate objective, that is, a contract of insurance, but the performance for which he bargains is the services of the insurance agent in obtaining the best possible terms consistent with the owner's insurance needs. Such a contract could arise even though the agent was given the authority to ascertain some of the facts essential to the creation of the ultimate contract of insurance, such as the appraised value of the property to be covered or the most advantageous premium.

The insurance broker holds himself out as an expert in his field and in dealing with his clients ordinarily he invites them to rely upon his expertise in procuring the insurance which best fits their require-

ments. Obviously, liability for failure to procure insurance could not arise unless the agent had sufficiently definite directions from his principal to enable him to consummate the final insurance contract. Perhaps ordinarily the broker and his client expressly agree upon all of the essential elements which are to be included in the final insurance contract. But such an *express* agreement is not necessary; the scope of the risk, the subject matter to be covered, the duration of the insurance, and other elements can be found by implication.

██ The principal vice of the instruction is that it could be considered by the members of the jury as prohibiting them from finding a contract to procure insurance from facts short of an express agreement to that effect. There were facts from which a contract to procure insurance could reasonably be implied. As we have already indicated, at the time of the negotiations in question there were in existence several policies of insurance on the buildings and equipment on the plaintiff's plant site. These policies were executed only after the defendants had discussed with plaintiff at some length his fire insurance program, and the terms of these policies embodied the original program upon which the parties had reached agreement. The previous coverage is relevant in the present case. From the fact that the parties had agreed upon a five-year term as the duration of the coverage under the policies already in force, it would be reasonable to infer that the additional coverage was to be for the same term. "Previous dealings between the parties are the strongest and, in most instances, the most definite basis for implying terms of a contract." Patterson, Essentials of Insurance Law (2nd ed) p. 88. As there pointed out, an enforceable contract of in-

surance could arise out of an agreement to renew an existing policy without more. *Lawrence v. Francis,* supra; *Western Assurance Co. v. McAlpin,* 23 Ind App 220, 55 NE 119, 77 Am St 423 (1899); *Mallette v. British-American Assur. Co.,* 91 Md 471, 46 A 1005 (1900). An agreement to increase the amount of insurance on property already covered, or to broaden the risk, or to add property not previously covered would stand on the same footing. See, *Globe & Rutgers Fire Ins. Co. v. Draper,* 66 F2d 985 (9th Cir 1933); *Winne v. Niagara Fire Insurance Co.,* 91 NY 185 (1883); *Newark Machine Co. v. Kenton Insurance Co.,* 50 Ohio St 549, 35 NE 1060, 22 LRA 768 (1893); *Milwaukie Bedding Co. v. Graebner,* 182 Wis 171, 196 NW 533 (1923). In each case the previous dealing reflected in an existing policy is a legitimate source for the drawing of inferences necessary to fill out the essential ingredients in the contract. It is well settled that the duration of the added coverage may be thus implied. *Eames v. Home Ins. Co.,* 94 US 621, 24 L Ed 298 (1876); *Globe & Rutgers Fire Ins. Co. v. Draper,* 66 F2d 985 (9th Cir 1933); *Hartford Fire Ins. Co. v. Tatum,* 5 F2d 169 (5th Cir 1925); *Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co.,* 227 Ala 667, 151 So 827 (1933); *Rezac v. Zima,* 96 Kan 752, 153 P 500 (1915); *Kor v. American Eagle Fire Ins. Co.,* 104 Neb 610, 178 NW 182 (1920).

In the case at bar the existing policies were for a period of five years. It would be reasonable to assume that any additional insurance on additions and improvements would run for a corresponding period. The instruction could be taken to mean that no such implication could be indulged in and that an express agreement would have to be reached with respect to the term of the additional insurance. And likewise with

respect to the premium. The rate schedule on sawmill property is not a set figure for all plants. The rate varies in accordance with the combustible condition of the property and other factors. Again it would be reasonable to assume that the premium on the added coverage would be fixed in the same manner as the rate in the original policies were fixed. *Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co.,* 61 F2d 264 (8th Cir 1932) ; *Post v. Aetna Insurance Company,* 43 Barb (NY Sup Ct) 351 (1864). Cf., *Cleveland Oil Co. v. Norwich Ins. Society,* 34 Or 228, 55 P 435 (1898). In the case at bar the jury could reasonably find that the defendants had agreed to procure the added insurance at the best possible terms. *Colpe Inv. Co. v. Seeley & Co.,* 132 Cal App 16, 22 P2d 35 (1933) ; *Newark Machine Co. v. Kenton Insurance Co.,* supra; *Roberts v. Sunnen,* 38 Wash2d 370, 229 P2d 542, 29 ALR2d 165 (1951). See, 16 Appleman, Insurance Law and Practice, §§ 8831, 8841. The instruction required the jury to find that the premium "must be agreed upon and paid or exist as a valid legal charge against the party to be insured." We do not think that the average juror would interpret this to mean that proof could be made out by implication.

We have tested the instruction subject to attack upon the hypothesis that all of the terms and conditions of the insurance policy contemplated need not be expressly agreed upon by the parties. This view is supported in the adjudicated cases. First it may be noted that the cases draw the distinction between a contract of insurance and a contract to procure insurance as contended by the plaintiff. In *Brown v. Cooley,* 56 N M 630, 247 P2d 868 (1952) plaintiff brought an action against the defendant to recover premiums due on certain policies of insurance. De-

fendant counterclaimed alleging that plaintiff had orally agreed to procure a policy of insurance covering defendant's trailer and dolly with the usual kind of insurance carried by him on other equipment. Plaintiff contended that the evidence was insufficient to establish an oral contract of insurance. After referring to an earlier case relied upon by plaintiff, the court said, at page 872:

"* * * In the case at bar it was not necessary for the appellee to prove the elements of a *contract of insurance* as laid down in the above case. He was only required to prove that he had directed the appellant to obtain the necessary insurance for him and that appellant had agreed to do so but failed and neglected to perform his duty.

"In Case v. Ewbanks, Ewbanks & Co., 194 N.C. 775, 140 S.E. 709, 711, the court said:

" 'Plaintiff is not seeking to hold defendants liable on a contract to insure his building. He seeks to recover of them damages for breach of contract to procure for, and to issue to, him a valid policy. There is no contention by plaintiff that defendants are liable to him on a contract of insurance. He contends that they are liable for negligent failure to procure for and to issue to him, such contract.'

"See, also Meiselman v. Wicker, 224 N.C. 417, 30 S.E.2d 317; Elam v. Smithdeal Realty & Insurance Company, 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210; Russell v. O'Connor, 120 Minn. 66, 139 N.W. 148."

*Burroughs v. Bunch,* 210 SW2d 211 (Tex 1948) is illustrative of the cases which recognize that a contract to procure insurance may arise out of negotiations in which some of the essential elements of a contract of insurance are not expressly agreed upon. In that case the subject matter of the insurance was a building then

under construction. The parties had not even expressly agreed upon the risk to be covered. It was held that this element and others could be arrived at by implication from a previous course of dealing and from attendant circumstances. The court said, at page 215:

"* * * He either had, or could have, obtained with the exercise of the least diligence, all of the facts necessary to obtain the insurance. He knew the approximate cost of the building, could have known the approximate length of time it would take to construct same; knew that coverage was desired while the building was under course of construction.

"Appellant's contention that [the agent] failed to specify the character of the coverage desired is deemed without merit. [The agent] testified that the proximity of the building to water was discussed. It is thought that protection against fire is the most usual form of insurance on buildings."

In *Rezac v. Zima*, 96 Kan 752, 755, 153 P 500, 502 (1915), after noting that the duration of the insurance and the premium were not agreed upon, the court said, "but there are well-known standards as to both of these which must be deemed to have been within the contemplation of the parties when their agreement was made."

In *Russell v. O'Connor*, 120 Minn 66, 139 NW 148, 149 (1912) the plaintiff alleged that a contract to procure insurance arose out of a telephone conversation in which some of the elements of the insurance were not discussed, one of which was the premium to be paid. The court said:

"* * * The defendant contends that this conversation created no contract whatever, and placed him under no legal obligation to the plaintiff, for the reason, among others, that the plaintiff's building was not insurable as contemplated by him, or as

requested by him, the same being unfinished, unrated, and a 'special hazard,' on which the defendant was not authorized to write insurance in any of his companies. If this conversation occurred, which, as we have held, was a question for the jury, we have no doubt that a contract was created. There was evidence tending to show that the defendant represented a number of companies, and had previously written several policies for the plaintiff on other properties, as before stated, himself selecting the companies and delivering the policies previously to the payment of the premiums, which were subsequently paid by the plaintiff on demand. The defendant's claim that no contract resulted, based on the contention that the failure to agree upon the premium prevented a meeting of minds sufficient to contract, is untenable. The relation between the parties arising from the conversation created an implied obligation on the plaintiff's part to pay the premium if the policy had been written. Campbell v. American Fire Ins. Co. of Phila., 73 Wis 100, 109, 40 N.W. 661."

In the following cases the terms of a contract to procure insurance or a contract of insurance were found by implication. *Globe & Rutgers Fire Ins. Co. v. Draper,* supra; *Lawrence v. Francis,* supra; *Rezac v. Zima,* supra; *Ames-Brooks Co. v. Aetna Ins. Co.,* 83 Minn 346, 86 NW 344 (1901); *Kor v. American Eagle Fire Ins. Co.,* supra; *Post v. Aetna Insurance Company,* supra; *Newark Machine Co. v. Kenton Insurance Co.,* supra; *Fliger v. Pennsylvania Fire Ins. Co.,* 48 R I 274, 137 A 470 (1927); *Milwaukie Bedding v. Graebner,* supra. See: Note, 12 Vand L Rev 839 (1959); Note, 5 Ark L Rev 227 (1951); 3 Richards on Insurance (5th ed), § 389.

◼ The trial court instructed the jury that it was necessary for plaintiff to prove that "the duration of the risk or term of the insurance was known and had

been agreed upon by the parties." The plaintiff excepted to the instruction on the ground that an agreement as to the duration of the insurance is not an essential element of a contract to procure insurance. As we have indicated above, a contract to procure insurance is not consummated unless the parties have either expressly or impliedly agreed upon the essential elements of a contract of insurance. The instruction is subject to criticism for the reason noted in connection with the instruction set out earlier; it can be regarded as an instruction that an express agreement as to the duration of the policy must be found before plaintiff is entitled to recover. The duration of a contract of insurance could have been readily implied from the previous dealings between the parties. *Eames v. Home Ins. Co.*, supra; *Hartford Fire Ins. Co. v. Tatum*, supra; *Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co.*, supra; *Concordia Fire Ins. Co. v. Heffron*, 84 Ill App 610 (1899).

■ The trial court further instructed the jury that it was necessary for plaintiff to prove "that there was a meeting of the minds on each of the essential elements of the contract." The instruction then continued as follows:

"In that regard, you may take into consideration, among the other matters upon which I have instructed you, whether or not the defendant had with him all the necessary information that he required about the alleged property to be insured against; specifically, the various items insured and their value, in determining whether there was a meeting of the minds upon the essential elements about which I have instructed you."

Plaintiff excepted to the instruction on the ground that it assumed as a fact a matter in controversy and with

respect to which there was a conflict of testimony. It was plaintiff's position that the amount of additional insurance agreed upon was determined by taking 95% of $226,290.16, which was the amount shown on the appraisal report. If the jury believed this version of the transaction the instruction would be misleading in that it could be taken to mean that plaintiff was required to prove that the parties contemplated a computation of the total value of the separate items to be covered. The first part of the instruction put the matter in general terms, informing the jury that it was to take into consideration "whether or not defendant had with him all the necessary information that he required about the alleged property to be insured against," but the instruction went on to specify the character of the required information and thus qualified the previous charge. We think that the instruction in that form should not have been given.

The trial court sustained defendants' objection to the introduction into evidence of several exhibits which consisted of reports prepared by defendants prior to the issuance of the policies of insurance on March 2, 1955. Plaintiff contends that the rejected reports were relevant and material to show a previous course of dealings and particularly the deliberate manner in which the parties had agreed upon the terms of the insurance. It is argued that this evidence would tend to strengthen the inference that on January 4, 1956 the parties had in mind the same terms and conditions with respect to additional insurance as they had agreed upon with respect to the insurance originally issued. The trial court admitted the policies which were issued after the previous negotiations mentioned above. These policies embodied the terms and conditions dealt with in the reports. The reports themselves do show the

particularity with which the defendants advised plaintiff as to a proposed insurance program. However, aside from showing the terms of insurance proposed, which as we have indicated embodied these terms, there was nothing in the reports themselves which would help the jury draw relevant inferences with respect to the agreement alleged to have been made on January 4, 1956. The exhibits, therefore, were properly excluded.

Evidence was introduced by defendant showing the amount paid by plaintiff for the stock of Talent Sawmills, Inc. in 1952. This evidence has no relevance to the issues in the case and the objection to its admission should have been sustained. See, *Trook v. Sagert,* 171 Or 680, 138 P2d 900 (1943). Defendants' counsel, in his argument to the jury, compared plaintiff's original investment with the amount of his recovery under his insurance policies. This comparison was not relevant. The trial court refused to give the plaintiff's requested instructions designed to limit the jury's consideration of this matter. Upon a retrial of the cause the exclusion of evidence of the plaintiff's original investment would be proper and its exclusion would, of course, render such comparison inappropriate and subject to exception.

Plaintiff attempted to establish that certain terms of insurance such as the duration of risk and the character of the peril insured against were understood by the custom in trade where the parties had not expressly reached an agreement as to such terms. The evidence was excluded. It was error to do so. Plaintiff's case rested upon proof that there was an implied agreement to procure insurance. The implication would be aided by proof that in the trade certain terms not expressly agreed upon were deemed applicable in the absence of evidence of a contrary intent.

*De Grove v. Metropolitan Insurance Co.,* 61 NY 594, 602 (Ct App 1875); 3 Richards on Insurance (5th ed), §§ 389, 390.

■ Error is assigned for failure to give the following instruction:

"You are instructed that when an insurance broker or agent, with a view to compensation for his services, undertakes to procure insurance on the property of another, he then becomes the agent of the person whose property is to be insured in negotiating for the policy or policies, and owes a duty to his client, or principal, to exercise reasonable skill, care and diligence in obtaining the insurance, and if the insurance agent or broker neglects to procure the insurance and does not follow instructions, or otherwise fails to act with proper and customary skill and care generally used by those in like business, his client is entitled to recover from him the amount of any damage proximately caused by such failure to exercise such reasonable skill, care and diligence. Therefore, you are instructed that if you find from a preponderance of the evidence that the defendants undertook and agreed to procure additional insurance upon the property referred to in plaintiff's third amended complaint, and if you further find that the defendants failed to exercise reasonable skill, care and diligence in obtaining such additional insurance for the plaintiff, and you further find that plaintiff was damaged as a proximate result thereof, then you must return your verdict for the plaintiff and against the defendants."

The substance of the requested instruction was given in other instructions describing defendants' duty in the event that a contract was found to exist. The jury was told that in such case the defendants were required to act with due diligence and within a reasonable time to place the additional insurance agreed upon. This was

sufficient to state the nature of defendants' duty as an agent to procure insurance. Therefore, there was no error in refusing to give the requested instruction.

■ The trial court also sustained objections to testimony elicited from Gilbert Tumy in an offer of proof, which showed that in prior dealings defendants had not required plaintiff to make prepayment of the premiums on policies issued to plaintiff and that credit had been extended to him over a period of several months. We think that the evidence should have been received. From their previous course of dealing it could be reasonably inferred that in the negotiations on January 4, 1956 the parties contemplated that the premium would be at the usual rate and that the issuance of the policy need not await the payment of the premium. See, *Mock v. Glens Falls Indemnity Company,* 210 Or 71, 309 P2d 180 (1957).

It is our opinion that the errors in the trial of this cause could have affected the jury's determination and that the plaintiff did not receive a fair trial. The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.