Jack **GALLUN** et al., Appellants,

v.

The **McLAUGHLIN COMPANY**, a Maryland corporation, and Samuel Brecher, Appellees.

No. 7688.

District of Columbia Court of Appeals.

Argued March 27, 1974.

Decided June 17, 1974.

Rehearing Denied Aug. 8, 1974.

J. Steven Lempel, Washington, D. C., with whom Philip N. Margolius, Washington, D. C., was on the brief, for appellants.

Thomas J. Scanlon, Washington, D. C., for appellees.

Before KELLY, PAIR and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

This appeal is from a judgment entered notwithstanding the verdict in an action commenced on a complaint alleging breach of contract and negligence in the conduct of an insurance brokerage business.

At the time of the acts and omissions complained of, appellants (Gallun) were the owners of a two-story frame building (the building) in the City of Alexandria, Virginia. Appellees (Brecher) are respectively a Maryland corporation authorized to conduct an insurance brokerage business in the District of Columbia and its vice president.

The allegations of the complaint were in substance that Brecher breached an oral contract to obtain—prior to noon on June 23, 1970—the renewal of fire insurance on the building and that, in violation of the agreement, he failed and neglected—until noon on June 29, 1970—to obtain the renewal of such insurance. There were further allegations that, by reason of Brecher's acts and omissions, Gallun sustained an uncompensated loss of $4,392.80 when the building was damaged by fire.

The issues respecting liability and damages having been drawn, the case was tried to a jury. At the close of Gallun's case and again at the close of all the evidence, Brecher moved for a directed verdict urging that the evidence was insufficient to establish liability on either theory. The trial court reserved any ruling on the motion and submitted the case to the jury which returned a verdict for Gallun in the sum of $3,590.82.[1] This appeal followed the entry of judgment for Brecher notwithstanding the verdict.[2]

Viewing the evidence—as we must—in the light most favorable to Gallun,[3] it established that Gallun had for a number of years employed Brecher to procure various kinds of insurance, including fire insurance on the building involved. Brecher regularly extended Gallun credit and the usual arrangement was for Gallun to make a down payment and to pay in installments the balance of any insurance premium.

Sometime in 1969 Brecher informed Gallun that, because of the high risk involved in insuring the frame building which was then vacant, it would be difficult to obtain renewal of existing insurance through regular channels. Brecher advised that insurance could be obtained through the Virginia Insurance Placement Facility (the Facility).[4] At Gallun's direction, Brecher thereupon procured, through the Facility, insurance on the building for the period commencing at noon on June 23, 1969 and

---

1. From this record we are unable to determine whether the jury based its verdict on a finding of breach of contract, of negligence, or both, but see 16 Appleman Ins. L. & P. § 8841, where it is said that, in a proper case, recovery is permitted under either theory.

2. Super.Ct.Civ.R. 50(b).

3. Shewmaker v. Capital Transit Co., 79 U.S. App.D.C. 102, 143 F.2d 142 (1944); Dixon v. District of Columbia, D.C.Mun.App., 168 A.2d 905 (1961).

4. The Virginia Insurance Placement Facility is a state insurance authority established pursuant to the National Insurance Development Program, 12 U.S.C.A. § 1749bbb (1969). See in this connection District of Columbia Ins. Placement Fac. v. Washington, D.C.App., 269 A.2d 45, 47 (1970).

ending at noon on June 23, 1970. As required by the Facility, payment in advance of the premium was made before the insurance was placed.[5]

On May 12, 1970, Brecher was notified by the Facility that the insurance on the building would expire on June 23rd and that:

> The Facility can place for you the above insurance. If insurance is desired, please return the attached copy of this notice with total required premium.
>
> A policy will be ordered upon receipt in this office within the next 30 days of the total required premium. . . . .

Brecher forwarded the notice to Gallun on May 13th and attached to it a note which reads:

> Attached is a quotation for renewal of . . . policy on above building, premium $468.00.
>
> If you want to accept it, initial . . . and return it to us with your check for $468.00 payable to us. We will certify our check and order your renewal.

Gallun did not reply to or otherwise acknowledge receipt of the notice from the Facility or of Brecher's note of May 13th. In fact, there was no further contact between the two of them until June 22, 1970, one day prior to the expiration of the insurance on the building. On that day Gallun had a telephone conversation with Brecher in regard to the renewal of the insurance on the building. When at trial he was asked why he had delayed so long in responding to Brecher's offer to procure through the Facility the insurance, Gallun stated:

> I never in the past had to rush a payment to him before. I always talked to him before, and he came right to my place of business right before a policy

was due, and I made arrangements to pay so much down, and then I would pay the rest in three or four partial payments.

Gallun stated further:

> I told Mr. Brecher that I knew this policy was due to expire on the 23rd, and I . . . told him I expected a dentist in there, and I thought my rates would be less . . . .
>
> . . . He told me to go ahead and send the money in, and I would be covered, everything would be all right.
>
> At the time I told him if it would be all right if I just sent in a partial payment . . . and could I just send him $200, that I would send it to him that day after I talked to him. He said, "Go ahead and do it, and that will be fine. You will be covered."

Gallun then obtained two money orders in the total sum of $200 which he mailed to Brecher, together with his acceptance of the Facility's May 12th offer to place insurance on the building.[6]

Immediately upon receipt on June 24th of Gallun's initial payment of $200, Brecher authorized the issuance of his company's check for $468, advising the company's underwriter that:

> . . . Insured will pay balance next month. Also, advise Virginia Fair Plan [the Facility] that property is no longer vacant. . . .

On June 25th the underwriter of Brecher's company forwarded to the Facility payment in full of the required premium. However, by reason of the intervening weekend, the check was not received by the Facility until the afternoon of June 29th, some seven hours after the building was damaged by fire.

---

5. The full premium for the insurance was paid by the bank institution which at that time held a mortgage on the building.

6. It appeared in bold type upon the face of the May 12, 1970 notice from the Facility that "THIS IS NOT A BINDER. NO INSURANCE HAS BEEN PLACED."

In ruling on the motion for judgment notwithstanding the verdict, the trial court concluded as a matter of law that there was no evidence from which reasonable and fair-minded men could have found (1) that Brecher breached any contract to procure for Gallun insurance on the building, or (2) that Brecher was negligent in the performance of the duty he assumed when he undertook to procure through the Facility such insurance. Finding no error in the court's ruling, we affirm.

## THE BREACH OF CONTRACT THEORY

Gallun contends that Brecher breached an oral contract made June 22nd to obtain renewal of the insurance on the building which was due to expire at noon on June 23rd.

It is uncontroverted in the record that Gallun did not respond to Breacher's May 13th communication and did not, until June 22nd, give any indication of his intention to accept the Facility's offer to place insurance on the building or to again employ Brecher as his agent for that purpose. Thus, at the time of the telephonic conversation on June 22nd, no agency relationship existed between Brecher and Gallun. *See in this connection* Lewis v. Michigan Millers Mutual Ins. Co., 154 Conn. 660, 228 A.2d 803 (1967). Gallun says however that, in the past, he was never required to rush payment of the premium for any insurance he employed Breacher to procure and that he was always permitted to make a partial payment and to pay the balance of the premium in installments. Gallun insisted that a similar arrangement was made on June 22nd in respect to the renewal of the insurance in question and that he was assured by Brecher that, upon receipt of the partial payment of $200, he "would be covered, everything would be all right."

Gallun reasons from this that Brecher on June 22nd assumed a binding obligation to procure—by a date certain, *viz.*, June 23rd—renewal of the insurance on the building. The difficulty with this is that Brecher's undertaking was conditioned upon receipt of Gallun's initial payment and it is undisputed that such payment was not received until June 24th, after the insurance had expired. Moreover, there is no showing that Brecher was a policy-writing agent or that on June 22nd he was under any contractual obligation to expend his company's funds to procure insurance for the building. Nor is there any showing that on June 24th Brecher had any authority to bind the Facility to place the insurance [7] prior to the receipt by it of $468, the required premium. *Cf.* Adkins & Ainley v. Busada, D.C.App., 270 A.2d 135 (1970). But more than this, it is beyond dispute that the authority conferred upon Brecher by the agency relationship created on June 24th was to procure insurance through the Facility. Brecher's only undertaking, therefore, was to pay the Facility the full amount of the required premium, conditioned upon receipt of Gallun's down payment of $200.

Thus, contrary to the representation on page 5 of Gallun's brief, he was not only fully informed that the Facility would not place an order for the renewal of the insurance until receipt by it in advance of the required premium, but also that Brecher would not extend him credit until receipt of a down payment of $200. Gary v. Blanchard, 228 So.2d 515 (La.App.1969). Consequently, to construe the words "you will be covered, everything would be all right" as an undertaking to insure or as a binder would be to give legal effect to an agency relationship proscribed by D.C.Code 1973, § 35–1334. In our view the words could properly have been understood by Gallun to mean no more than that Brecher upon receipt of $200 would certify the company's check in full payment to the Facility of the required premium.

7. *See* D.C.Code 1973, § 35–1334.

Pursuant to this credit arrangement Brecher, upon receipt on June 24th of Gallun's acceptance of the Facility's offer and the partial payment of $200, immediately authorized payment by his company of the full amount of the premium which on June 25th was mailed to the Facility.

As pointed out above, prior to June 24th no agency relationship existed between Brecher and Gallun in respect to insurance on the building.[8] Brecher was, therefore, under no obligation whatsoever to secure Gallun against loss by fire. *See* Gary v. Blanchard, *supra*; *cf.* Marano v. Sabbio, 26 N.J.Super. 201, 97 A.2d 732 (1953), where the broker undertook to secure the plaintiff against any loss by reason of robbery, saying "There is a binder on it— you're covered" and that he (the plaintiff) could wait until delivery of the policy before paying the premium.

We hold, therefore, that the trial court did not err when it ruled as a matter of law that the evidence was insufficient to show any breach of contract to procure by a date certain insurance on the building. *See* Gary v. Blanchard, *supra*.

## THE NEGLIGENCE THEORY

■ Much the same must be said in respect to the contention that Brecher, in violation of a duty assumed on June 22nd, neglected to extend Gallun credit prior to the receipt of $200, neglected to inform him that there would be a lapse in the insurance, and neglected—until noon on June 29, 1970—to obtain renewal of insurance on the building. The short answer to all of this is that there is no showing that Brecher was under any duty, prior to June 24, 1970, to extend Gallun credit. In fact, no agency relationship existed between the parties until the receipt by Brecher on that date of

Gallun's initial payment of $200. 16 Appleman Ins. L. and P. § 8727; Lewis v. Michigan Millers Mutual Ins. Co., *supra*. We think that Brecher then proceeded expeditiously in accordance with the agreement.

What stands out in the record is that Gallun was on May 13, 1970, fully informed by Brecher that insurance on the building would expire on June 23rd and transmitted to him at that time was the offer of the Facility to cause the insurance to be renewed—conditioned upon payment in advance of the required premium. Gary v. Blanchard, *supra*. Although Gallun had in 1969 employed Brecher to procure insurance through the Facility, he made no reply to the May 13th communication and gave no indication until June 22nd that he intended to accept the Facility's offer and to employ Brecher as his agent to procure the insurance. Lewis v. Michigan Millers Mutual Ins. Co., *supra*.

Since the company's check was forwarded to the Facility almost immediately upon receipt of Gallun's initial payment, we do not perceive that reasonable men could have found under the circumstances any negligence in the discharge of the brokerage function. Gary v. Blanchard, *supra*; *cf.* Marano v. Sabbio, *supra*. But whatever view may be taken of Brecher's conduct, it is too clear for further discussion that if Brecher was under any theory negligent, Gallun was guilty of contributory negligence as a matter of law.

The conclusion which must follow is that the trial court committed no error when it ruled as a matter of law that the evidence was insufficient to establish any neglect in the discharge of the brokerage function which was the proximate cause of Gallun's uncompensated loss.

Judgment affirmed.

---

8. When Brecher procured through the Facility insurance on the building for the period commencing June 23, 1969 and ending June 23, 1970, the agency relationship was terminated and he owed Gallun no further duty in respect to such insurance until, on June 24, 1970, another agency relationship was created. *See* 44 C.J.S. Insurance § 140 (1945); 16 Appleman Ins. L. & P. § 8727; Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir. 1952); Lewis v. Michigan Millers Mutual Ins. Co., *supra*.